803 F.2d 61
 15 Collier Bankr.Cas.2d 952, Bankr. L. Rep. P 71,512
TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,
Plaintiff-Appellee,
v.
David L. BUTLER, James L. Grauer, James E. Kassis, and One
City Centre Associates, a California Limited
Partnership, Defendants-Appellants.
 Docket 86-7178.
 United States Court of Appeals,
Second Circuit.
 Heard April 15, 1986.
Decided Oct. 9, 1986.
 
 Fried, Frank, Harris, Shriver & Jacobson, New York City (Robert E. Gerber, Wayne Eastman, of counsel), for plaintiff-appellee.
 Willkie Farr & Gallagher, New York City (Francis J. Menton, Jr., J. Kelly Strader, of counsel), for defendants-appellants.
 Before MANSFIELD, KEARSE and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 Before us is a motion to stay an appeal made by parties that appealed a district court judgment. Such an anomalous motion is not an everyday occurrence. Not satisfied with this clever bit of lawyering, the movants mounted more cunning maneuvers to thwart the effect of the adverse judgment. It is no wonder that in exceeding the limits of adversarial effort they only succeeded in outfoxing themselves, and that the district court, which found their conduct "outrageous," imposed sanctions against them.
 
 
 2
 Plaintiff entered into a long-term loan agreement at a fixed rate of interest with defendants for the development and construction of an office building in Sacramento, California. As interest rates declined defendants became increasingly disenchanted with their deal, so much so--as the district court found--that they grasped onto a default prepayment provision in the closing documents in a "last-ditch attempt" to undo the loan agreement. Plaintiff instituted a diversity action in the United States District Court for the Southern District of New York (Weinfeld, J.), in which it asserted that defendants breached their contract by failing to negotiate the dispute between them in good faith. Defendants countered that plaintiff had breached the contract by insisting on the inclusion of a provision that was not in the commitment letter.
 
 
 3
 After a six-day bench trial Judge Weinfeld issued his decision on January 28, 1986, 626 F.Supp. 1229, finding for the plaintiff. Three days later the district judge signed the judgment. Later that same day--across the continent--defendants were busily devising schemes to render the adverse judgment ineffective. After the close of business on the 31st on the east coast, defendants filed a petition on behalf of the partnership under Chapter 11 of the Bankruptcy Code in the Eastern District of California and obtained from the California bankruptcy judge a temporary restraining order preventing plaintiff from enforcing its judgment against the defendant partnership--which in any event was protected by the automatic stay provision of the Bankruptcy Code--and also preventing plaintiff from enforcing the judgment against each of the three defendant general partners, none of whom had filed bankruptcy petitions.
 
 
 4
 Not content with these attempts to neutralize the judgment, defendants went further. On March 3rd a bankruptcy trustee nominated by the general partners and appointed by the bankruptcy court filed a petition to remove the breach of contract case from the Southern District of New York to the Eastern District of California Bankruptcy Court. Two days later the general partners filed a notice of appeal from the District Court of New York's judgment to the Bankruptcy Appellate Panel of the Ninth Circuit. Then, these same defendants appealed the same judgment to the Ninth Circuit and, finally, an appeal was filed from the January 28 decision in this Court.
 
 
 5
 Plaintiff responded to these legal maneuvers by petitioning the district judge for injunctive relief barring defendants from appealing its January 28 decision to any court other than the Second Circuit. Plaintiff also sought to bar the partners from collaterally attacking the judgment entered as a result of that decision and to be awarded sanctions. Judge Weinfeld granted the injunction pending determination of the appeal by this Court, and ordered the general partners to pay plaintiff $1,500 each in costs and attorneys' fees for their "outrageous" conduct. Defendants have also appealed from this order dated March 27, 1986, 58 B.R. 1019.
 
 
 6
 In the motion before us, defendants--the partnership and the general partners--seek to stay the appeals from the decision of January 28 and the order of March 27, 1986 based on 11 U.S.C. Sec. 362 (Supp. III 1985). They argue that the district court wrongly concluded that the automatic stay and the associated temporary restraining order obtained by the general partners in the Eastern District of California had no application to these appeals. For reasons to be discussed shortly, we grant the motion staying the appeal from the district court's judgment with respect to the debtor partnership on condition that the judgment of the district court be given full faith and credit by the bankruptcy court in California, and without prejudice to the plaintiff's right to petition that court to have the stay of the appeal vacated. The motion to stay the appeal on behalf of the general partners is denied.
 
 I FACTS
 
 7
 The facts are simply stated. The underlying action arose out of alleged breaches of a commitment letter agreement entered into by plaintiff-appellee Teachers Insurance and Annuity Association of America (Teachers) and the defendants-appellants One City Centre Associates (City Centre or the partnership) and its general partners, David L. Butler, James E. Kassis and James L. Grauer (general partners). Teachers is a New York nonprofit corporation which provides annuities and insurance programs to educational institutions and derives income from various investments, including long-term loans on commercial real estate ventures. City Centre is a California limited partnership that undertook the development and construction of a high rise office building, One City Centre, in Sacramento, California.
 
 
 8
 After extended negotiations between Teachers and City Centre, a commitment letter was signed on September 9, 1982 providing the necessary construction financing for the period during which the building was under construction and permanent financing upon completion. In July 1983 Teachers' counsel sent the closing document to City Centre for review and comments. This document contained a default prepayment provision. Prior to the closing date--set for April 30, 1984--Teachers and City Centre had agreed on all provisions except for the language of the default prepayment fee. On April 30 the general partners informed Teachers that they were unwilling to accept Teachers' loan so long as the documents contained this particular condition. Teachers then drew the full amount of a $200,000 letter of credit that previously had been provided by City Centre under the commitment letter and brought suit for breach of contract.
 
 II PROCEEDINGS
 
 9
 Teachers initiated its breach of contract claim in the Southern District of New York seeking to recover damages in the amount of $3,991,408. This sum represented the difference between the 14.25% interest rate agreed upon in the commitment letter and the 11.89% prevailing rate of interest on Teachers' loans during the month after the closing, over the 35 year period of the loan, discounted to present value. Teachers also sought to recover $170,000 for interest over a six-month period following City Centre's refusal to close and $22,411 reflecting attorneys' fees for counsel retained for the closing. The partnership asserted that Teachers breached the contract by including in the closing documents an 18% default prepayment fee that was not included in the commitment letter, and counterclaimed to recover a $400,000 commitment fee and the $25,000 appraisal and engineering inspection fee it paid to Teachers.
 
 
 10
 As already noted, on January 28, 1986 the district court found after a six-day non-jury trial that City Centre had breached its duty of fair dealing and good faith implied in every contract under New York law and awarded damages to Teachers in the sum of $3,005,390. City Centre's counterclaim was dismissed because City Centre failed to sustain its burden of proof. On January 31 the district court judge signed the judgment; and on that day the partnership filed its bankruptcy petition in the Bankruptcy Court for the Eastern District of California. The bankruptcy judge issued an order temporarily restraining the initiation or continuation of any actions against City Centre's general partners. On February 4 the district court's judgment was filed and it was entered on February 6, 1986.
 
 III ISSUES
 
 11
 This motion raises two questions--whether a debtor who takes an appeal after filing for bankruptcy may on its own motion stay that appeal, and whether non-debtor general partners are entitled to a stay of proceedings against them. We discuss each question in turn.
 
 A. Debtor Stay
 
 12
 Section 362 of the Bankruptcy Code automatically stays all proceedings against the debtor:
 
 
 13
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of--
 
 
 14
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.
 
 
 15
 11 U.S.C. Sec. 362(a)(1) (Supp. III 1985). It provides the debtor with "a breathing spell from his creditors." S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5840-41. Provision for relief from the effect of a stay is set forth in Sec. 362(d) which states that upon request of "a party in interest" the bankruptcy court can grant relief from the stay after notice and a hearing. See Cathey v. Johns-Manville Sales Corp., 711 F.2d 60, 62-63 (6th Cir.1983), cert. denied, --- U.S. ----, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986).
 
 
 16
 We recognize that there are compelling policy reasons why an appeal initiated by the debtor should not be considered a proceeding "against the debtor" within the meaning of Sec. 362(a); that is, such action can only inure to the benefit of the debtor and the debtor will not be forced to defend frivolous or vexatious lawsuits since the litigation is within its control. Nonetheless, we conclude that the debtor's status must be determined in accordance with its status at the time of the original proceeding. Cathey, 711 F.2d at 61-62 (quoting Assoc. of St. Croix Condominium Owners v. St. Croix Hotel, 682 F.2d 446, 449 (3d Cir.1982)). The determination should not shift depending upon which party is ahead at a particular stage in the litigation. Cathey, 711 F.2d at 62; Assoc. of St. Croix Condominium Owners, 682 F.2d at 449. The stay is designed to give the debtor time to organize its affairs--which includes protection from having to defend claims brought against the estate as well as continuing to pursue judicial proceedings on its own behalf. While the latter is within the debtor's control, it may still distract a debtor's attention from its primary goal of reorganizing.
 
 
 17
 Applying this rule to the facts of this case, all criteria of Sec. 362(a)(1) have been satisfied. The original action was brought by Teachers against City Centre for a claim that arose before bankruptcy, and the partnership's appeal is a continuation of those judicial proceedings. Therefore the automatic stay of Sec. 362(a) attaches to the debtor's appellate proceedings, subject to the right of Teachers to seek relief from the bankruptcy court under Sec. 362(d). In Re Holtkamp, 669 F.2d 505, 507 (7th Cir.1982). The policy concerns that Teachers has raised for relief from this stay should be directed to the bankruptcy court in the Eastern District of California.
 
 B. General Partner Stay
 
 18
 The remaining issue is to determine whether the stay of the appeal should encompass not only the debtor partnership, but also the individual general partner defendants who have not declared bankruptcy. It is well-established that stays pursuant to Sec. 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants. See, e.g., Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1329-30 (10th Cir.1984); Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 126-27 (4th Cir.1983); Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1196-97 (6th Cir.1983); Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 544 (5th Cir.1983); Austin v. Unarco Indus., Inc., 705 F.2d 1, 4-5 (1st Cir.), cert. denied, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); Pitts v. Unarco Indus., Inc., 698 F.2d 313, 314 (7th Cir.1983) (per curiam). But cf. A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999-1001 (4th Cir.1986) (automatic stay may be extended to non-bankrupt co-defendant in unusual circumstances). Chapter 11, unlike Chapter 13, contains no provision to protect non-debtors who are jointly liable on a debt with the debtor. See Royal Truck & Trailer v. Armadora Maritima Salvadorena, 10 B.R. 488, 491 (Bankr.N.D.Ill.1981) (contrasting the congressional purposes behind Chapter 13 and Chapter 11).
 
 
 19
 Our examination therefore is limited to the question of whether pursuant to its general equity powers under 11 U.S.C. Sec. 105, the bankruptcy court properly extended the automatic stay to the non-bankrupt general partners. Several courts have held that under specific circumstances non-debtors may be protected by the automatic stay--even though such protection may be temporary--if it contributes to the debtor's efforts to achieve rehabilitation. See, e.g., In re Johns-Manville Corp., 33 B.R. 254, 263-64 (Bankr.S.D.N.Y.1983); In re Old Orchard Investment Co., 31 B.R. 599, 603 (Bankr.W.D.Mich.1983); In re Otero Mills, Inc., 25 B.R. 1018, 1020-21 (Bankr.D.N.M.1982). And, of course, the district courts often utilize their discretionary power to stay proceeding in the interest of justice and in control of their dockets. See, e.g., Wedgeworth, 706 F.2d at 544-45; American Motorists Insurance Co. v. Philip Carey Corp., 482 F.Supp. 711, 716 (S.D.N.Y.1980).
 
 
 20
 While we decline to define under what circumstances, if any, a bankruptcy court may properly exercise Sec. 105 jurisdiction to issue a stay with respect to non-bankrupt co-defendants, it is clear that any such jurisdiction cannot extend to efforts made in bad faith by non-bankrupt co-defendants in order to escape from the liability imposed by an adverse district court judgment. And here the circumstances plainly attest to the defendants' bad faith. As the district court correctly noted, "[t]he record makes abundantly clear that the defendants are engaging in frivolous and vexatious litigation, simultaneously filing pleadings and papers in numerous courts with the sole purpose to delay and frustrate the ability of Teachers to execute judgment with respect to the non-debtor individual defendants...."
 
 
 21
 Moreover, the idea for extending the stay to the non-bankrupt defendants clearly did not originate with the trustee in bankruptcy, as is evident from the brief time sequence from the trustee's appointment to the time of his petition to extend the stay. Marathon Pipe Line instructs us that bankruptcy courts cannot entertain and decide traditional common law actions. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 90-91, 102 S.Ct. 2858, 2881, 73 L.Ed.2d 598 (1982) (Rehnquist, J., concurring). It is no large step from that core holding to the proposition that bankruptcy courts cannot interfere in common law actions involving non-bankrupt co-defendants when those defendants are engaged in a bad faith effort to nullify the outcome of those actions. Consequently, insofar as the non-bankrupt general partners are concerned, the motion to stay the appeals from the January 28, 1986 judgment for $3,005,390 and the March 27, 1986 injunction and sanctions order must be denied.
 
 IV RES JUDICATA
 
 22
 Finally, the stay of City Centre's appeal that we are granting is conditioned upon the requirement that the district court's January 28th decision and the judgment that followed be given full faith and credit by the bankruptcy court. Although the judgment did not become final for purposes of appealability until February 6, 1986 when it was entered on the docket--after the automatic stay in bankruptcy had come into effect on January 31st--the judgment was nevertheless final for res judicata purposes. See, e.g., Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 89 (2d Cir.1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149, 1191 (5th Cir.1982), vacated on other grounds, 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983). Thus, the bankruptcy court should not permit the partnership to relitigate issues already decided by Judge Weinfeld, for to allow the partnership to do so, when it knew of the judgment before it filed for bankruptcy, would result in its slipping arguments through the backdoor that had already been turned away at the frontdoor. See In re Gottheiner, 703 F.2d 1136, 1141 (9th Cir.1983); cf. Matter of McKanders, 42 B.R. 108, 109 (Bankr.N.D.Ga.1984) ("The automatic stay which is issued when initiating a new case may not be used to abuse or thwart prior proper orders of the court in a prior case.").
 
 
 23
 In similar contexts courts have held that a bankruptcy court is precluded from relitigating judgments rendered by courts of competent jurisdiction, absent a showing that the judgment was procured by fraud or collusion. See, e.g., Heiser v. Woodruff, 327 U.S. 726, 736, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946) (under the Bankruptcy Act fraud issue litigated twice before may not be relitigated in bankruptcy court under principles of res judicata ); Kapp v. Naturelle, Inc., 611 F.2d 703, 708 (8th Cir.1979) (state court judgment against debtor conclusive in subsequent bankruptcy proceedings); Matter of Roloff, 598 F.2d 783 (3d Cir.1979) (where state foreclosure proceedings resulted in a judgment prior to filing of Chapter XII, bankruptcy court was without jurisdiction to relitigate the merits or amount of the judgment). Further, allowing relitigation in the bankruptcy court would subvert the intent of 28 U.S.C. Sec. 1294(1) (1982) which provides that appeals from district court decisions are to be heard by the court of appeals for the circuit that embraces the district.V CONCLUSION
 
 
 24
 City Centre's motion for a stay of appeal from the decision and order of the Southern District Court on January 28, 1986 is granted upon the conditions earlier recited. The motion for the stay of the appeal as to the individual non-debtor general partners is denied. The district court's injunction issued March 27, 1986 prohibiting all of the defendants-appellants from pursuing or initiating any appeals of or collateral attacks upon its judgment in any court other than the Second Circuit is also affirmed, as are the sanctions directed in that order, as we find no abuse of the district court's discretion in imposing them.
 
 
 25
 Motion to stay appeal granted as to the debtor partnership in part on recited conditions and denied as to the non-debtor general partners.