**In re CRYSTAL BRANDS SECURITIES LITIGATION. This document relates to: All Actions.**

**No. 5:92CV00411 (WWE).**

United States District Court, D. Connecticut.

Sept. 7, 1994.

746

J. Daniel Sagarin, Elias A. Alexiades, Hurwitz & Sagarin, Milford, CT, Joshua Rubin, Abbey & Ellis, Robert I. Harwood, Jeffrey M. Haber, Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City, for plaintiffs.

James F. Stapleton, Kenneth W. Ritt, Joy Beane, Day, Berry & Howard, Stamford, CT, Darla C. Stuckey, Jospeh S. Allerhand, Weil, Gotshal & Manges, New York City, for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

EGINTON, Senior District Judge.

Plaintiffs bring this action against individual defendants who acted as controlling persons of Crystal Brands, Inc. ("Crystal Brands").[1] Plaintiffs allege securities fraud in violation of section 10(b) and section 20 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) & 78t. They further assert state law claims of fraud and negligent misrepresentation. In their consolidated amended class action complaint ("prior complaint"), plaintiffs alleged that defendants committed securities fraud by making materially false and misleading projections about Crystal Brands' expected profitability. On August 31, 1993, the Court dismissed the prior complaint without prejudice, finding that plaintiffs failed to plead fraud with particularity.

On October 25, 1993, plaintiffs filed a second amended class action complaint ("amend-

---

1. On January 21, 1994, Crystal Brands filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code, thereby triggering an automatic stay of plaintiffs' action against the company. Because plaintiffs have also sued the individual defendants in their capacity as controlling persons of Crystal Brands and because there is no indication that those persons are debtors for purposes of the bankruptcy proceeding, the Court will address the pending motion to dismiss as against the individual defendants. *Teachers Ins. and Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 65 (2d Cir.1986) (general rule is that automatic stay does not apply to proceedings against nonbankrupt co-defendants). Any reference to "defendants" pertains solely to the individual defendants, not to Crystal Brands.

ed complaint"). Defendants have moved to dismiss plaintiffs' amended complaint. For the reasons that follow, defendants' motion will be granted.

## I. FACTS

Plaintiffs are investors who purchased shares of Crystal Brands between April 16, 1991 and July 13, 1992. Crystal Brands is a corporation that manufactures clothing and costume jewelry marketed under different names. The individual defendants are current and former directors and officers of Crystal Brands.

█ In 1990, Crystal Brands posted record earnings. Thereafter, in 1991 through 1993, the company experienced a sharp economic downturn. The present case hinges on a series of public disclosures made by Crystal Brands between April, 1991 and July, 1993.[2]

On April 16, 1991, Crystal Brands reported a significant decline in earnings for the first quarter of 1991. At the same time, the company anticipated a substantial improvement in the second half of the year. Crystal Brands qualified its optimism, noting that it did not expect to reach the net profitability levels enjoyed in 1990.

On July 1, 1991, Crystal Brands announced a large scale restructuring program. The plan required the company to take a reserve of $50 million. As a result, Crystal Brands predicted a sharp decrease in the price of its stock for the second quarter. The company nevertheless expressed optimism about the anticipated impact of its restructuring plan and projected that earnings in the second half of 1991 would exceed the record earnings of the second half of 1990.

On July 23, 1991, consistent with its July 1, 1991 disclosure, Crystal Brands reported a loss for the second quarter. The report also emphasized Crystal Brands' confidence that the restructuring plan would benefit the company by enhancing its ability to respond to the ever-changing clothing industry. Crystal Brands explained:

[w]e are confident that [the restructuring plan] will enable Crystal Brands to reduce costs, pay down debt and immediately improve both our top and bottom line performances. As we look to the balance of the year, we are optimistic that our profit performance will exceed the record posted in the last half of 1990.

Crystal Brands' optimism proved to be misplaced. On October 22, 1991, the company reported that third quarter earnings were 12% lower than those during the same period in 1990. Given the unexpected weakness of its costume jewelry sales, Crystal Brands also expressed concern about fourth quarter earnings. The company updated its prior statements of optimism to account for what it expected to be a less rosy future.

On January 27, 1992, the company reported a fourth quarter loss. Again, the company attributed the poor performance to weak costume jewelry sales. Crystal Brands further explained that it had defaulted on financial covenants with its lenders. Shortly thereafter, Crystal Brands obtained $205 million in working capital financing, and the lenders waived the defaults.

On March 4, 1992, Crystal Brands issued its 1991 Annual Report and Form 10–K. The company reported a loss of $71.4 million, $50 million of which reflected charges associated with the restructuring plan. Richard Kral, then Chairman and Chief Executive Officer, candidly shouldered a portion of the blame. He noted that "two-thirds [of the problems] were self-inflicted" and explained that the company had pursued growth too aggressively, not made timely deliveries and failed to understand the demands of the new consumer. Kral stated that with continued working capital financing the company at least had a fair degree of security. Kral then tempered this minimally optimistic statement, noting that the company might need to raise cash through the sale of certain businesses or assets.

---

**2.** When assessing the sufficiency of a securities fraud action, a court may review public filings and the full text of documents that are integral to the plaintiffs' claims. *Cortec Indus., Inc. v. Sum* *Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Ferber v. Travelers Corp.,* 802 F.Supp. 698, 702 (D.Conn.1992).

The downward slide was unrelenting. On April 21, 1992, Crystal Brands reported a loss for the first quarter. The company indicated that it would sell its Men's Tailored Clothing Business and that the sale of additional assets and businesses remained possible. Nevertheless, the company predicted a return to profitability in the second half of 1992. On July 13, 1992, in its final disclosure of the class period, Crystal Brands announced that it would sell its interest in Lacoste Alligator S.A. and earmark a portion of the proceeds for working capital purposes.

Crystal Brands' performance from April, 1991 to July, 1992 was devastating to the company's shareholders. Stock prices plummeted from $25.875 per share to $5.00 per share during the class period. Plaintiffs brought this amended class action complaint seeking to recover their losses. They allege that as controlling persons of Crystal Brands, defendants fraudulently projected the company's performance and failed to disclose the company's financial troubles.

## II. DISCUSSION

Defendants contend that plaintiffs have not alleged fraud with particularity. According to defendants, plaintiffs have improperly relied on Crystal Brands' disclosures to establish that earlier statements of optimism were fraudulent. The Court agrees.

### A. *Standard of Review*

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss under the Federal Rules of Civil Procedure, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to

relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### B. *Section 10(b) of the Exchange Act*

■ It is well established that to state a claim for relief under section 10(b) of the Exchange Act, "a plaintiff must allege that in connection with the purchase or sale of securities, the defendant, *acting with scienter,* made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's actions caused [plaintiff] injury." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985) (emphasis added); *In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 264 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994). In the present case, the issue is whether plaintiffs have properly pleaded scienter.

■ In the context of section 10(b), scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1975); *Arthur Lipper Corp. v. S.E.C.,* 547 F.2d 171, 181 (2d Cir.1976), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978). Representations made in reckless disregard for their truth are also actionable. *Ferber v. Travelers Corp.,* 802 F.Supp. 698, 713 (D.Conn.1992) (*"Ferber II"*). A plaintiff may plead scienter by alleging facts that show a motive and an opportunity to commit fraud. *Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124, 1130 (2d Cir. 1994); *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985). If the allegations do not indicate a motive, a plaintiff must identify circumstance indicating conscious behavior by the defendant. *Beck v. Mfrs. Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

■ Allegations of securities fraud must satisfy the particularity requirements of Fed. R.Civ.P. 9(b). "In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed. R.Civ.P. 9(b). A complaint need only allege intent generally. It must however "allege facts which give rise to a *strong inference*

that the defendants possessed the requisite fraudulent intent." *Cosmas v. Hassett*, 886 F.2d 8, 12–13 (2d Cir.1989) (emphasis added);· *Beck*, 820 F.2d at 50. The complaint must also set forth "circumstances that might separate fraud from the benefit· of hindsight." *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978).

### 1. *Motive*

■ In the amended complaint, plaintiffs attempt to set forth allegations that establish defendants' motive for acting fraudulently. Plaintiffs assert that defendants desired to conceal Crystal Brands' liquidity problems in order to (1) maintain good relations with suppliers who might otherwise demand cash on delivery or cease giving priority status to Crystal Brands, (2) encourage retailers to place orders without worrying about delivery delays, (3) forestall lenders from defaulting Crystal Brands on certain loans, and (4) protect their own executive positions.

The basic flaw in plaintiffs' allegations of motive is that they do not specifically relate to defendants. Instead, they pertain to virtually any company that manufactures and distributes goods. It is inconceivable that a manufacturer, such as Crystal Brands, would not desire to maintain good relations with suppliers, retailers and lenders. Equally unexceptional is the allegation that the individual defendants wanted to protect their executive positions. The Court concludes that plaintiffs' allegations of motive do not establish fraud with particularity. To hold otherwise would be to circumvent the requirements of Rule 9(b) by allowing plaintiffs to allege scienter by reference to generic allegations of motive. *See, e.g., Shields*, 25 F.3d at 1130 ("To allege a motive sufficient to support the inference that optimistic but erroneous statements were fraudulently made, a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold."); *Tuchman v. DSC Communications Corp.*, 818 F.Supp. 971, 976 (N.D.Tex.1993); *Ferber v. Travelers Corp.*, 785 F.Supp. 1101, 1107 (D.Conn.1991) ("*Ferber I*"). ·

### 2. *Circumstances Indicating Conscious Misconduct or Recklessness*

Plaintiffs also allege circumstances that they contend give rise to a strong inference that defendants acted with scienter. They rely on the 1992 Annual Report, the 1992 Form 10–K and other statements made in 1993 (referred to collectively as "the 1993 disclosures"). They claim that the 1993 disclosures contain admissions of improper reporting. Plaintiffs further attempt to allege that given the nature of the clothing industry and the concomitant ability of clothing producers to accurately forecast profitability, defendants must have known that their statements of optimism were baseless.

### a. *The 1993 Disclosures*

■ In its 1993 disclosures, Crystal Brands acknowledged that it experienced a liquidity crisis during the class period. Reflecting on what had transpired in 1991, Crystal Brands stated that it had operated in a "crisis mode" in the face of severe liquidity problems. With respect to Crystal Brands' costume jewelry businesses, the company stated that prior years had been "frustrating because during that time the internal competition between the three [costume jewelry] brands was a bigger focus than external competition." According to plaintiffs, these statements indicate that in 1991, defendants knew of Crystal Brands' problems, but nevertheless made statements of optimism. Plaintiffs' allegations are fatally flawed.

The allegations are reminiscent of those set forth in the prior complaint. In dismissing the prior complaint, the Court rejected plaintiffs' use of subsequent disclosures to allege that prior disclosures were fraudulent. The Court explained that plaintiffs "have done no more than rephrase [Crystal Brands'] disclosures into conclusory statements of prior knowledge." *Ruling*, at 5 (Aug. 31, 1993). The Court concluded that because plaintiffs merely alleged "fraud by hindsight," the allegations failed to state a claim of securities fraud. · ·

The same analysis holds true with respect to plaintiffs' reliance on the 1993 disclosures. Plaintiffs employ these disclosures to allege

that defendants knew of and yet concealed Crystal Brands' financial troubles in 1991. Ironically, whereas the prior complaint relied on disclosures from 1991 and early 1992, the amended complaint now relies on disclosures made in *1993*. The Court concludes that plaintiffs' resort to the 1993 disclosures is yet another fruitless attempt to allege fraud by hindsight. *Denny,* 576 F.2d at 470; *Shields,* 25 F.3d at 1129 ("[w]e have rejected the legitimacy of alleging fraud by hindsight.").

Plaintiffs insist that they are *not* re-alleging fraud by hindsight. They argue that the 1993 disclosures contain *admissions* by defendants that they knew of Crystal Brands' problems but nevertheless projected optimism. Plaintiffs distort the fair import of the disclosures.

Through the 1993 disclosures, Crystal Brands merely chronicled its performance since 1991 in an effort to understand the origin of the company's financial difficulties. It is true that the 1993 disclosures highlight the company's liquidity problems and strained relations with suppliers, all of which lead the company to operate in a "crisis mode" throughout 1991. There is no indication however that defendants were aware of these problems in July 1991, when Crystal Brands made the erroneous predictions now at issue.

To the contrary, in October, 1991, when Crystal Brands began to appreciate the magnitude of its crisis, the company retracted its prior statements of optimism. Thereafter, the company was candid about its problems. In January 1992, Crystal Brands disclosed its precarious relationship with certain lenders. In March, 1992, Kral explained that the problems of 1991 were largely attributable to untimely deliveries and the company's failure to stay in touch with the demands of the "new consumer." Similarly, in March, 1992, before the its partial liquidation, Crystal Brands warned the investing public that circumstances might warrant the sale of certain businesses and assets.

Crystal Brands' disclosures do not, as plaintiffs urge, indicate that defendants knew of and yet concealed the company's financial woes. Rather, the disclosures indicate that defendants revealed the company's problems in a timely fashion. The most that one can say about defendants is that through the disclosures at issue they "admitted to being human." *Hershfang v. Citicorp.,* 767 F.Supp. 1251, 1258 (S.D.N.Y.1991). Such concessions do not strongly support an inference of fraud.

**b.  *The Nature of Crystal Brands' Operations***

■ The amended complaint also alleges that given the nature of the fashion industry, Crystal Brands must have known that it would perform poorly during the class period. The allegations explain that clothing manufacturers customarily design new product lines a year before delivery. Two to four months later, the manufacturers preview the new lines. About six months prior to delivery, manufacturers and retailers participate in a "market week" during which retailers place their orders for or express their interest in the new product lines. Plaintiffs allege that through this test-marketing process, clothing manufacturers can forecast their profit margins with a fair degree of certainty by the end of market week. Plaintiffs conclude that defendants must have known that Crystal Brands' statements of optimism were unfounded.

Plaintiffs' allegations skip an important step in the inferential process. The allegations concerning the nature of the fashion industry are devoid of any reference to the *actual results* of Crystal Brands' test-marketing. Plaintiffs are forced to assume that because Crystal Brands' performed poorly during the class period, the test-marketing results must have been discouraging. This assumption is inconsistent with Crystal Brands' disclosures.

Crystal Brands disclosed that its difficulties resulted from production and delivery delays. In addition, Crystal Brands attributed its poor performance to an unexpected downturn in costume jewelry sales. The company explained that since costume jewelry sales are driven by impulse buying, earnings depend on department store volume. Regardless of whether the results of "market week" were encouraging, intervening circumstances, such as production problems and

decreased store volume, caused Crystal Brands to perform poorly.

Read against Crystal Brands' disclosures, plaintiffs' allegations regarding the nature of the clothing industry do not indicate that defendants knew of and yet concealed an impending financial crisis. *Ferber II,* 802 F.Supp. at 702 (when written documents integral to allegations are inconsistent with allegations, written documents control). Financial difficulties became apparent *after* the test-marketing process, i.e., at the time of production, delivery and sale. It follows that plaintiffs' allegations regarding the nature of the fashion industry fail to establish scienter. As the Second Circuit succinctly stated, "an inference that the defendants knew their statements to be false cannot be based on allegations which are themselves speculative." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 173 (2d Cir.1990).

After careful review of the amended complaint, the Court concludes that plaintiffs have not pleaded scienter with particularity and therefore have failed to state a claim under section 10(b) of the Exchange Act. The allegations of scienter do not establish that defendants had a motive to commit the alleged fraud. Nor do they identify circumstances indicating conscious behavior by defendants. The allegations, in short, do not give rise to a *strong inference* that defendants acted with the requisite scienter. Plaintiffs' claim under section 10(b) must be dismissed. *Shields,* 25 F.3d at 1131.

## C. *Section 20 of the Exchange Act*

Plaintiffs' failure to state a claim under section 10(b) is fatal to its claim under section 20. Section 20 of the Exchange Act extends liability for securities fraud to "controlling persons." Because plaintiffs have failed to state a claim of securities fraud, their section 20 claim necessarily fails. *Ferber I,* 785 F.Supp. at 1111.

## D. *State Law Claims*

Plaintiffs assert state law claims of fraud and negligent misrepresentation. Because plaintiffs have not stated a claim under sections 10(b) and 20(a) of the Exchange Act, the Court will not exercise supplemental jur-

isdiction over plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3).

## III. *CONCLUSION*

For the reasons set forth herein, defendants' motion to dismiss [doc. # 34] is GRANTED with prejudice. The Clerk is directed to close the file.