**In re UNITED HEALTH CARE ORGANIZATION et al., Debtors.**

**Nos. 95 Civ. 1110 SAS, 95 Civ. 1111 SAS, and 95 Civ. 1112 SAS.**
**Nos. 96 Civ. 7334 SAS, 95 Civ. 3700 SAS.**

United States District Court, S.D. New York.

June 30, 1997.

Jonathan B. Alter, Bingham, Dana & Gould, Hartford, CT, for AMRESCO.

Jack E. Robinson, Carpenter & Robinson, Stamford, CT, for Carpenter, Olson, UHCO and UNACO.

Lowell Peterson, Meyer, Suozzi, English & Klein, Mineola, NY, for UAW.

Robert S. Smith, Hih Song Kim, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Revlon.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. Procedural Background

AMRESCO New England II, L.P. ("AMRESCO"), moves for an exemption from the Amended Preliminary Injunction Order issued on March 27, 1997.[1] This motion is best understood when viewed against the backdrop of three complex and related actions, which are described briefly below.

### A. The *Kovalesky* Action

The first of three related actions, *Kovalesky et al. v. Carpenter et al.*, 95 Civ. 3700(SAS), was commenced on May 22, 1995, by active and retired participants in a welfare benefit plan and trust known as the UHCO Plan and Trust (the "UHCO Plan"), their employers, and the national and local unions representing those participants. The *Kovalesky* plaintiffs alleged violations of ERISA, 29 U.S.C. § 1001 *et seq.*, federal common law and state common law; more specifically, they claimed that Carpenter and Olson, principals and officers of the UHCO Plan, had violated their fiduciary duties by causing the UHCO Plan to discriminate against many of its participants by denying them the health care benefits for which they and their employers had paid premiums.

On September 12, 1995, in anticipation of reaching an out-of-court settlement, the parties to this action signed a Consent Order that provided, *inter alia*, the following: (1) Defendants UHCO, Inc., Voluntary Benefits Systems, Inc. ("VBS"), and Benefit Concepts New York, Inc. ("BCNY") would file voluntary Title 11 petitions in the Bankruptcy Court for the District of Delaware; and (2) Defendants would move for, and plaintiffs would support, an injunction under 11 U.S.C. § 105 seeking to extend the automatic stay to include "all actions against Daniel E. Carpenter, John F. Olson and Benefit Concepts International, Inc. pending the Examiner's report". The Consent Order was endorsed by the Court, and the *Kovalesky* action was

---

1. This Order enjoined, *inter alia*, "any person, partnership, corporation, individual or entity, whether or not listed in Exhibit A to the December 21, 1995 injunction" from pursuing claims against Daniel E. Carpenter ("Carpenter") and John F. Olson ("Olson").

stayed pending the resolution of the Delaware bankruptcy proceedings.

### B. The *In re UHCO* Bankruptcy Proceedings

As agreed upon by the *Kovalesky* parties, UHCO, VBS and BCNY filed voluntary Title 11 petitions in the Bankruptcy Court for the District of Delaware. These actions were consolidated under the caption *In re UHCO,* 95 Civ. 1110 through 95 Civ. 1112. The bankruptcy court issued preliminary injunction orders pursuant to 11 U.S.C. § 105 enjoining specific parties from asserting any claims against Carpenter or Olson on December 21, 1995, March 1, 1996 and May 24, 1996.[2] On March 7, 1997, the *In re UHCO* proceedings were transferred to the United States Bankruptcy Court for the Southern District of New York. I withdrew the reference from the Bankruptcy Court by Order on March 13, 1997 and resumed jurisdiction over these cases. On March 27, 1997, I amended the bankruptcy court's preliminary injunction orders to include "any person, partnership, corporation, individual or entity, whether or not listed in Exhibit A to the December 21, 1995 injunction" from pursuing claims against Carpenter or Olson.

### C. The *UNACO* Action

On September 26, 1996, Locals 2326, 2321 and 2179 and the United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO (the "Local Unions" and "UAW") commenced a class action against the Union National Alliance Corp. ("UNACO"), Benefit Concepts, Inc., Oxford Health Plans ("Oxford"), Carpenter and Olson (the "*UNACO* action"). In this action, docketed as 96 Civ. 7334(SAS), plaintiffs claimed to be members of a class of participants in a health benefit plan known as UNACO, that Carpenter and Olson were fiduciaries of the UNACO plan, and that UNACO had failed to pay its participants' medical claims although those participants had paid their required premiums to UNACO.[3]

### D. The *AMRESCO* Action

In November of 1986, Carpenter and Olson, acting in their individual capacities, signed a $180,000 note with Advest Bank. This note was secured by a mortgage on certain real estate located in Connecticut. AMRESCO subsequently purchased the note from Advest Bank in June of 1995. Rather than foreclosing on that real estate, AMRESCO chose to pursue the entire debt by bringing a collection action on October 18, 1996, against Carpenter and Olson.[4] AMRESCO also filed prejudgment liens or attachments against real property owned by Carpenter and Olson (or their spouses) as provided by Connecticut law. Carpenter and Olson subsequently removed the AMRESCO action to the United States District Court for the District of Connecticut.[5]

## II. Subject-matter Jurisdiction

As it is a threshold matter, I address first AMRESCO's challenge to the subject-matter jurisdiction of this Court to enjoin its Connecticut action against Carpenter and Ol-

---

2. Although the Consent Order indicates that the parties intended to move the Bankruptcy Court to enjoin *all* actions against Carpenter and Olson, AMRESCO was not listed as a party subject to the bankruptcy court's preliminary injunction orders. On June 13, 1997, Jack Robinson, Counsel for Carpenter, Olson, UHCO and UNACO, stated that the *Kovalesky* defendants had not in fact moved the bankruptcy court to enjoin all actions against Carpenter and Olson due to an error by their local bankruptcy counsel.

3. I have already described the *UNACO* plaintiffs' claims against Oxford in an Opinion and Order dated May 22, 1997. *See Locals 2326 et al. v. UNACO et al.,* No. 96 Civ. 7334, 1997 WL 272388 (S.D.N.Y. May 22, 1997).

4. AMRESCO stated that it has not foreclosed on the property because it is now worth considerably less than $180,000. *See* Transcript of June 2 Hearing ("Tr.") at 14–15. AMRESCO also conceded that it purchased Carpenter and Olson's note from Advest Bank at a steeply discounted rate. It is apparent that the property was worth far less than $180,000 at the time AMRESCO purchased Carpenter and Olson's note.

5. This action, entitled *AMRESCO v. Olson et al.,* is docketed as 3:96 Civ. 2161(AWT), and is currently pending before the Hon. Alvin W. Thompson, United States District Judge for the District of Connecticut.

son. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir.1992) states quite clearly that 28 U.S.C. § 1334(b) (1988) provides district courts with subject-matter jurisdiction in all proceedings arising under or related to cases under Title 11. The same case explained that a civil proceeding is "related to" a Title 11 reorganization if its outcome might have any "conceivable effect" on the bankrupt estate. *Id.* (citing *In re Turner*, 724 F.2d 338, 340–41 (2d Cir.1983)).

Under this broad grant of subject-matter jurisdiction, there can be no question that this Court now has jurisdiction to issue an injunction to stay AMRESCO's action against Carpenter and Olson. As is discussed more thoroughly in Part IV of this Opinion, if AMRESCO is permitted to continue its action —— and thus maintain its prejudgment liens or attachments on real estate assets of Carpenter and Olson —— the parties' proposed settlement agreement in *In re UHCO* will not be able to proceed. The AMRESCO action is therefore "related to" the *In re UHCO* proceedings, and falls within the subject-matter jurisdiction of this Court.

### III. Injunctions to Stay Proceedings Against Non–Debtors

■ Stays pursuant to 11 U.S.C. § 362(a) are limited to debtors and may not be extended to non-bankrupt entities. *See Teachers Ins. and Annuity Association of America v. Butler*, 803 F.2d 61, 65 (2d Cir.1986) (citing cases). However, as the Court of Appeals has noted, "[s]everal courts have held that under specific circumstances non-debtors may be protected by the automatic stay ... if it contributes to the debtor's efforts to achieve rehabilitation." *Id.* (citing, inter alia, *In re Johns–Manville Corp.*, 33 B.R. 254, 263–64 (Bankr.S.D.N.Y.1983)). The source of the authority to issue such an injunction is 11 U.S.C. § 105, which provides bankruptcy courts with general equity powers to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

As this language indicates, section 105 is intended to assure that bankruptcy courts may take whatever actions are necessary to further the purposes of the substantive provisions of the Bankruptcy Code. Yet there are limits to the relief that may be granted under section 105. As one court stated, "[t]hat statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986). *See generally*, 2 *Collier on Bankruptcy* ¶ 105.01[2] at 105–07 (15th ed.1997).

■ In *Butler*, the Second Circuit expressly declined "to define under what circumstances, if any, a bankruptcy court may properly exercise § 105 jurisdiction to issue a stay with respect to non-bankrupt co-defendants." I look therefore to the decisions of courts in this district and other Circuits to determine when such injunctions properly may be issued. This body of case law establishes that courts may enjoin proceedings against a non-debtor third-party defendant under § 105 where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986) (citing *In re Johns–Manville Corp.*, 26 B.R. 405, 410 (Bankr.S.D.N.Y. 1983)). One example of a situation where such an injunction would be permitted would be a suit against a third party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against it in the case. *See id.* at 999. *See also In re Lomas Financial Corp.*, 117 B.R. 64, 68 (S.D.N.Y.1990).

Courts have also stayed creditor actions against non-debtors where they have found that the bankrupt estate would be adversely effected because the creditor's action would prevent the non-debtor from contributing funds to the reorganization, or would consume time and energy of the non-debtor that would otherwise be devoted to a reorganization effort. *See Chase Manhattan Bank v. Third Eighty–Ninth Assocs.*, 138 B.R. 144, 147 (S.D.N.Y.1992) (citing cases); *In re Lomas Financial Corp.*, 117 B.R. at 66. *See generally* 2 *Collier on Bankruptcy*

¶ 105.03[1] and [2] (15th ed.1997). Section 105 injunctions are granted in these circumstances because one of the overriding purposes of the Bankruptcy Code is to provide debtors with breathing room from their creditors to increase the chances of a successful reorganization. As non-debtors do not fall within the protection of the automatic stay provided by § 362, at times § 105 must be invoked on their behalf to prevent creditors from frustrating an otherwise-viable reorganization effort by pursuing actions against them. In other words, "Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code." *Variable–Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 945 F.Supp. 603, 608 (S.D.N.Y. 1996) (quoting *A.H. Robins Co.*, 788 F.2d at 999).

■ Courts have not uniformly adopted a standard analytic approach in determining whether a § 105 injunction should issue to stay a proceeding against a non-debtor. Some opinions, for example, have dispensed entirely with the traditional requirements that there be no adequate remedy at law and that there be irreparable harm. *See, e.g., In re L & S Industries, Inc.*, 989 F.2d 929, 932 (7th Cir.1993) (citing, *inter alia, In re Chateaugay Corp.*, 93 B.R. 26, 29 (S.D.N.Y. 1988)). Others have begun their analysis by following the traditional standard for issuance of a preliminary injunction. *See, e.g., In re Zale Corp.*, 62 F.3d 746, 765 (5th Cir.1995). A leading bankruptcy treatise, however, argues that the test for issuance of a § 105 injunction is best stated as follows:

> The first requirement is that there be danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize. Second, there must be a reasonable likelihood of a successful reorganization. Third, the court must balance the relative harm as between the debtor and the creditor who would be restrained. Fourth, the court must consider the public interest; this requires a balancing of the public in-

terest in successful bankruptcy reorganizations with competing societal interests.

2 *Collier on Bankruptcy* ¶ 105.02[2] at 105–13 (15th ed.1997) (quoting *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 752–53 (Bankr. E.D.Pa.1986)).

Although it has not yet been adopted by a majority of courts in this district or elsewhere, the latter approach is most faithful to the basic purposes of the Bankruptcy Code and § 105 itself. The Bankruptcy Code is designed to achieve either a reorganization or a fresh start, and § 105 injunctions may be issued only as "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. It make sense to adopt a preliminary injunction standard with these principles in mind. The standard quoted above should be understood as "an evolution of the general requirements for a preliminary injunction, adapted for the bankruptcy context." 2 *Collier on Bankruptcy* ¶ 105.02[2] at 105–13.

## IV. Discussion

### A. Danger of Imminent, Irreparable Harm to Debtor's Ability to Reorganize

■ On June 13, 1997, counsel for Carpenter, Olson, UHCO, UNACO, Revlon Consumer Products Corporation ("Revlon") and UAW reported that a settlement agreement had been reached in all of the pending actions. The parties' agreement requires Carpenter and Olson to contribute their own assets to the UHCO estate. In turn, the UHCO estate will then be liquidated under the provisions of the Bankruptcy Code.

Having reviewed Carpenter and Olson's tax returns *in camera*[6], as well as their sworn affidavits regarding their personal assets, I find that they do not currently have sufficient liquid assets to contribute to the UHCO estate as required under the proposed settlement agreement. Carpenter and Olson intend to obtain the necessary funds

---

**6.** I received and reviewed *in camera* Carpenter and Olson's federal and state tax returns for the years of 1994 through 1996 pursuant to my request at the June 13, 1997 conference. I subsequently requested, received and reviewed *in*

*camera* the tax returns of LICA Administrative Services, Inc., as well as a letter from Robinson pertaining to the financial status of Carpenter's corporate affiliates and a 1994 financial statement submitted by Carpenter to Advest Bank.

by mortgaging the same Connecticut realty on which AMRESCO has placed prejudgment liens or attachments. Unfortunately, no such financing is possible while AMRESCO's liens or attachments remain in effect. The practical effect of AMRESCO's prejudgment liens or attachments, therefore, is to prevent Carpenter and Olson from obtaining the funds necessary to bring about the settlement of *In re UHCO*, as well as the other two actions listed above.

### B. Reasonable Likelihood of a Successful Reorganization

■ As the parties have announced that they have reached an agreement to settle this case, it appears that a successful "reorganization" — or, in this case, a Chapter 11 liquidation — is likely to occur. However, I note that the settlement is expressly contingent on Carpenter and Olson's ability to obtain financing on their personally-owned realty. Given that these properties already carry substantial mortgages, I am less than sanguine that Carpenter and Olson will in fact find willing creditors to finance this settlement. Nevertheless, I find there is a reasonable likelihood of settlement in this case.

### C. Balance of the Harm

■ Enjoining AMRESCO from pursuing its action now does not deprive AMRESCO of its right to do so after the resolution of *In re UHCO, Kovalesky* and *UNACO*. Admittedly, it may be more difficult to collect a judgment after Carpenter and Olson have further mortgaged their Connecticut realty to finance the settlement of those actions. But there is no reason to think that Carpenter and Olson will never be able to pay their debt to AMRESCO in the future. And given the alternative — allowing AMRESCO's action to proceed now at the cost of providing some payment to the *Kovalesky* and *UNACO* plaintiffs and relief from further litigation to the many participants in the UHCO and

UNACO health care plans — I find that on balance the hardship to AMRESCO caused by this injunction is heavily outweighed by the hardship that would be caused should it be permitted to pursue its action against Carpenter and Olson.[7]

### D. The Public Interest

■ Finally, I note that the *Kovalesky, In re UHCO* and *UNACO* actions have generated a disproportionate number of thorny legal issues that would require this Court's attention if the parties to those actions cannot settle their differences among themselves. Given the difficulty of these issues, there can be no guarantee that my decisions would be upheld on appeal, and thus these cases threaten to linger indefinitely in this Court and those above, generating large legal fees that neither the defendants nor the bankrupt estate appears capable of paying. For these reasons, I find that the public interest in promoting out-of-court settlements and conserving judicial resources weighs against AMRESCO's motion.

### E. Scope and Duration of the Injunction

■ The particular circumstances of this case warrant an injunction against AMRESCO's effort to pursue its action before the proceedings in *In re UHCO, Kovalesky* and *UNACO* are resolved. As explained above, AMRESCO's action directly interferes with the resolution of *In re UHCO* by foreclosing a source of funding necessary to a Chapter 11 liquidation that is acceptable to the creditors and to the debtor. Hence, AMRESCO's action has a direct and unavoidable adverse effect on the bankrupt estate. Carpenter and Olson have established that all four requirements of issuing a § 105 injunction have been met, and thus have shown that AMRESCO may be enjoined pursuant to § 105. *See, e.g., In re North Star Contracting Corp.,* 125 B.R. 368, 371 (S.D.N.Y.1991) (enjoining state court action against debtor's president

---

7. Mr. Robinson has repeatedly referred to AMRESCO in his legal memoranda and at oral argument as a large, sophisticated corporation that is in the business of buying mortgages on depressed real estate such as the Advest Bank mortgage in this case. Counsel for AMRESCO has never contradicted these assertions, and there is no reason to think that they are inaccurate. Given AMRESCO's apparently robust status and experience in the field, it is safe to say that it will not suffer great financial hardship or unfair surprise should it be required to delay its collection action against Carpenter and Olson for a brief period of time.

upon finding that president was "a principal player in the corporation's reorganization process" and that action would adversely affect debtor's assets).

■ This injunction, of course, does not have the effect of actually dismissing AMRESCO's action before Judge Thompson of the District of Connecticut. Nor does it remove the prejudgment liens or attachments placed on Carpenter and Olson's realty pursuant to that action. AMRESCO correctly noted during the June 13, 1997 status conference that only Judge Thompson may dismiss AMRESCO's action and related liens or attachments.

Nor am I willing to enjoin AMRESCO indefinitely while Carpenter and Olson seek the financing they hope to obtain. I will therefore only extend this preliminary injunction for 90 days. If Carpenter and Olson have not obtained the funds required by the settlement agreement within that time, they will be required to demonstrate good cause as to why AMRESCO should continue to be barred from pursuing its action against them. If they fail to do so, AMRESCO will be free to re-commence its action in the forum of its choice.

## V. Conclusion

For the foregoing reasons, AMRESCO's motion for exemption from the March 27 Amended Preliminary Injunction Order is denied.

A status conference is scheduled for 90 days from today, at 4:30 P.M. on September 28, 1997, at which time the parties to the *In re UHCO, Kovalesky,* and *UNACO* actions should be prepared to report the status of the settlement of those actions.

SO ORDERED.