**John GRAY, Nancy Gray, and Thomas Gray, Plaintiffs,**

v.

**Gerald P. HIRSCH, Churchill Mortgage Investment Corp., Abbot & Cromwell Corp., Churchill Securities, Inc., Edinberg Services Ltd., Churchill Conservation Services, Inc., C.D. Investment Group, Sensible Mortgage Co., and Does I to X, Defendants.**

No. 97 Civ. 3082 CBM.

United States District Court, S.D. New York.

Jan. 8, 1999.

*MEMORANDUM OPINION*

MOTLEY, J.

Plaintiffs John Gray, Nancy Gray, and Thomas Gray filed this action against defendant Gerald P. Hirsch and several business entities he controlled (the "Hirsch entities"). The Grays claim that Mr. Hirsch fraudulently induced them to purchase unregistered securities, in violation of federal statutes, state statutes, and state common law.

The present question is whether the action, as against Mr. Hirsch, should be stayed during the Hirsch entities' bankruptcy. For the reasons given below, the court concludes that action against Mr. Hirsch should not be stayed and that the court should consider the pending motion for partial summary judgment against Mr. Hirsch.

I. Background

A. History of Proceedings

During the dealings at issue, Mr. Hirsch "owned or controlled" the Hirsch entities. *See In re Churchill–Hemisphere, Inc.,* 97 Civ. 5301(CBM) (S.D.N.Y. July 21, 1997) (Heiss decl. ¶ 1). He was "chairman of the 'Churchill Group'" of Hirsch entities, *United States v. Hirsch,* 97 Cr. 1038(DAB) (S.D.N.Y. Sept. 30, 1997) (indictment against Gerald Hirsch ¶¶ 1, 9), through which he "presented his companies as operating under a single umbrella," *In re Churchill–Hemisphere, Inc.,* 97 Civ. 5301(CBM) (S.D.N.Y. July 21, 1997) (Heiss decl. ¶ 26).

The Grays filed this action on April 29, 1997. By that time, however, the Securities and Exchange Commission ("SEC") had spent years prosecuting claims that Mr. Hirsch and the Hirsch entities violated federal securities law. In 1993, the SEC filed a complaint for injunctive relief against Mr. Hirsch and two of the Hirsch entities: Churchill Securities, Inc. and Churchill Mortgage Investment Corp. ("CMIC"). *See Sec. & Exch. Comm'n v. Churchill Sec., Inc., et al.*, 93 Civ. 7486(CBM). The SEC alleged that the three defendants distributed unregistered securities, in violation of §§ 5(a), (c) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77e(a), (c), and that the defendants made material misrepresentations in doing so, in violation of § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), as well as § 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5.

That SEC lawsuit ended in this court by consent with an April 16, 1996 final judgment of permanent injunction and other equitable relief aiming to prevent further securities law violations ("1996 injunction"). On March 25, 1997, however, after the SEC alleged that the securities law violations were continuing, the Honorable Thomas P. Griesa entered a stipulation and order against Mr. Hirsch and the Hirsch entities. *See Sec. & Exch. Comm'n v. Churchill Sec., Inc., et al.*, 93 Civ. 7486(CBM) (stipulation and order dated March 25, 1997) ("1997 order"). Part I of the 1997 order found that between April 1996 and January 1997, Mr. Hirsch and CMIC committed the violations the SEC alleged in its 1993 complaint, and thus violated the 1996 injunction as well. Part II held Mr. Hirsch and CMIC in civil contempt of the 1996 injunction for their continuing securities law violations. Part III froze assets of Mr. Hirsch and the Hirsch entities. Part IV ordered disclosure of all assets controlled by Mr. Hirsch and the Hirsch entities. Parts V–XII appointed a receiver to protect property of the Hirsch entities, to monitor transactions of the Hirsch entities, and to make reports to the court about the Hirsch entities.

On April 10 and April 28, 1997, this court issued orders modifying the 1997 order. Most relevant to the present matter is the April 28 order, which allowed the receiver to file bankruptcy petitions for the Hirsch entities. *See Sec. & Exch. Comm'n v. Churchill Sec., Inc., et al.*, 93 Civ. 7486(CBM) (orders dated April 10 and 28, 1997). An involuntary Chapter 7 petition had been filed against CMIC on April 17, 1997; the receiver then filed voluntary Chapter 7 petitions on behalf of all 14 other known Hirsch entities on June 23, June 27, and July 2, 1997. All 15 Hirsch entities remain in bankruptcy. *In re Churchill Mortgage Inv. Corp., et al.*, Chapter 7 Case Nos. 97 B 20967, 21613–21618, 21673–21677, 21708–21710 (Bankr.S.D.N.Y.).

The disputed dealings have led to not only civil and bankruptcy proceedings, but also criminal proceedings. On September 30, 1997, Mr. Hirsch was indicted on 16 counts of mail fraud, § 18 U.S.C. § 1341. *United States v. Hirsch*, 97 Cr. 1038(DAB) (S.D.N.Y.).

B. The Summary Judgment Motion and Bankruptcy Stay Issue

On February 9, 1998, the court issued a pre-trial scheduling order for the Grays' planned summary judgment motion. The order provided that the motion would be taken on submission and provided due dates between February 20 and March 27, 1998 for those submissions. On February 20, 1998, the Grays moved for partial summary judgment on the issue of Mr. Hirsch's liability under Counts I, II, and III of their complaint. Mr. Hirsch, having earlier indicated his view that action against him should be stayed, made no submission on the summary judgment motion by the ordered due date or since.

On July 6, 1998, the court denied the Grays' summary judgment motion without prejudice because of an unaddressed threshold question: should the bankruptcy of the Hirsch entities stay action against Mr. Hirsch in the present case? In the order denying summary judgment, the court ordered submissions from the parties, due between August 5 and September 11, 1998, on whether the Grays' action against Mr. Hirsch

should be stayed, pursuant to the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a)(1), because of the bankruptcy of the Hirsch entities. The court would decide the issue on submission. Only the Grays made a submission, but the court has considered the issue based on its own inquiry as well as the Grays' submission.

## II. Conclusions of Law

### A. General Limitation of Stay to Bankruptcy Debtor

The Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a)(1), protects bankruptcy debtors from contemporaneous judicial proceedings:

> a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

*Id.* Mr. Hirsch controlled the Hirsch entities as officer and principal. However, while all 15 Hirsch entities are bankruptcy debtors, Mr. Hirsch as an individual is not. An action against Mr. Hirsch would not appear to be a proscribed "action or proceeding against the debtor," 11 U.S.C. § 362(a)(1), under the statute's plain meaning and the interpretation of courts in this circuit.

■ "It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Ass'n v. Butler, et al.,* 803 F.2d 61 (2d Cir.1986) (declining to extend stay of action against debtor partnership to its co-defendants, non-debtor individual partners). Applying *Teachers Ins. & Annuity Ass'n,* courts in this circuit regularly refuse to extend a debtor corporation's § 362 stay to its non-debtor officers and principals. *See, e.g., Variable–Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., et al.,* 945 F.Supp. 603 (S.D.N.Y.1996)

(non-debtor principal who, under state law, was debtor corporation's "alter ego"); *E.I. Du Pont De Nemours & Co. v. Fine Arts Reprod. Co., et al.,* No. 93 Civ. 2462(KMW), 1995 WL 312505, *5 (S.D.N.Y. May 22, 1995) (non-debtor who was debtor corporation's president and guarantor); *Levesque v. Kelly Communication, Inc., et al.,* 164 B.R. 29, 30 (S.D.N.Y.1994) (non-debtor whose two debtor corporations bore his name); *CAE Indus. Ltd., et al. v. Aerospace Holdings Co., et al.,* 116 B.R. 31, 32 (S.D.N.Y.1990) (non-debtor former Chairman, CEO, and Director of debtor corporation); *In re Crazy Eddie Sec. Litig.,* 104 B.R. 582, 584 (E.D.N.Y.1989) (all non-debtor co-defendants affiliated with debtor corporation); *Ripley v. Mulroy, et al.,* 80 B.R. 17, 18 (E.D.N.Y.1987) (non-debtor "president, sole common-stock shareholder, and controlling person" of debtor corporation). Mr. Hirsch's control over the Hirsch entities is insufficient, without more, for their stay to encompass this action against him.

### B. Extension of Stay to Non–Debtor in "Unusual Circumstances"

■ A non-debtor can claim the protection of a debtor's stay only in "unusual circumstances," as the Fourth Circuit held in *A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), which courts in this district cite as the leading case on extension of a § 362 stays to a non-debtor. *See, e.g., In re United Health Care Org., et al.,* 210 B.R. 228 (S.D.N.Y.1997) (staying action against non-debtor principals and officers of debtor corporation); *In re North Star Contracting Corp.,* 125 B.R. 368, 370–71 (S.D.N.Y.1991) (same for non-debtor president of debtor corporation).

*A.H. Robins* held that in light of the "narrow construction" courts give the scope of § 362 stays, extension of a stay to a non-debtor only "arises when there is such identity between the debtor and [non-debtor] that the debtor may be said to be the real party defendant and that a judgment against the [non-debtor] will in effect be a judgment ... against the debtor." 788 F.2d at 999. *A.H. Robins* specifically addressed a non-debtor "entitled to absolute indemnity from the debtor." *Id. Accord In re North Star Con-*

*tracting Corp.,* 125 B.R. 368, 371 (S.D.N.Y. 1991).

Applying *A.H. Robins,* courts in this district have stayed actions against non-debtor officers and principals of debtor corporations, but only where the stayed actions would have posed a serious threat to the debtors' reorganization efforts. In *In re United Health Care Org., et al.,* 210 B.R. 228 (S.D.N.Y. 1997), the court noted that "[c]ourts have . . . stayed creditor actions against non-debtors where they have found that the bankrupt estate would be adversely affected because the creditor's action would prevent the non-debtor from contributing funds to the reorganization, or would consume time and energy of the non-debtor that would otherwise be devoted to a reorganization effort." *Id.* at 232. The court then found that the debtor corporation's successful reorganization was contingent upon the two non-debtor defendants' contribution of their personal assets and efforts, which justified a stay of actions against the two. *Id.* at 234.

Similarly, *In re North Star Contracting Corp.,* 125 B.R. 368 (S.D.N.Y.1991), carefully distinguished the general rule limiting bankruptcy stays to debtors because the case featured the requisite unusual circumstances. The court found that the "evidence shows that [debtor's] reorganization efforts would be harmed if [the] state lawsuit is allowed to proceed against [debtor's] President . . . [who] is a principal player in the corporation's reorganization process; he negotiates with the creditor's committee and formulates plans for reorganization." *Id.* at 371.

■ The broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization. The threatened harm may be to needed debtor funds (e.g., when non-debtors are entitled to indemnification) or personnel (e.g., when debtors need the services of non-debtors facing crushing litigation). The question is whether the action against the non-debtor is sufficiently likely to have a "material effect upon . . . reorganization effort[s]," *CAE Indus. Ltd., et al. v. Aerospace Holdings Co., et al.,* 116 B.R. 31, 34 (S.D.N.Y.1990), that debtor protection requires an exception to the usual limited scope of the stay.

**C. Lack of Sufficient "Unusual Circumstances" in Mr. Hirsch's Case**

■ Mr. Hirsch's case features no "unusual circumstances" sufficient to justify extending the Hirsch entities' stay so as to protect Mr. Hirsch from the Grays' action against him. The Hirsch entities need not indemnify Mr. Hirsch and, more importantly, are in receivership, out of Mr. Hirsch's hands. The Grays' action against Mr. Hirsch does not pose any serious threat of a material effect on the Hirsch entities' financial or personnel needs for reorganization.

The bankruptcy court has taken no action indicating any belief otherwise. The bankruptcy court has relied almost exclusively on the standard statutory automatic stays, adding only limited injunctive relief against efforts to collect specific assets in Mr. Hirsch's control that bankruptcy proceedings might find are Hirsch entity assets. *See In re Churchill Mortgage Inv. Corp.,* 97 B 20967(ASH) (Bankr.S.D.N.Y.) (orders dated Nov. 19, 1997 and Sept. 16, 1998). The court enjoined judgment creditors of Mr. Hirsch from efforts "to obtain possession of property that belongs or may belong" to CMIC, *see* Nov. 19, 1997 order, but then modified that order "to permit . . . [two parties] to resume prosecution of the mortgage foreclosure proceeding" they had brought against Mr. Hirsch, *see* Sept. 16, 1998 order. Whether or not the Hirsch entities' bankruptcies might place any limits on the Grays' ability to collect particular assets of Mr. Hirsch in enforcing a judgment is, at this time, a premature and unnecessary question. The Hirsch entities' bankruptcies place no limits on the Grays' present efforts to prosecute to judgment this action against Mr. Hirsch.

■ It is conceivable that a successful prosecution by the Grays could have some adverse effect on the Hirsch entities, such as by depleting the funds of Mr. Hirsch, whom the bankruptcy court at some point might order to return assets to the bankrupt Hirsch entities. There often is some such risk to a debtor that an action against a present or former principal or officer would

**244**

hinder its reorganization in some way. Limited or theoretical risk must be insufficient, however, or else the *Teachers Ins. & Annuity Ass'n* rule against extending stays to officers and principals would be eviscerated. Accordingly, as this court has held before, "[i]n the absence of evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant." *CAE Indus. Ltd., et al. v. Aerospace Holdings Co., et al.,* 116 B.R. 31, 34 (S.D.N.Y.1990).

### III. Conclusion

For the reasons given above, the court holds that this matter should not be stayed pursuant to the Bankruptcy Code. Accordingly, the court will proceed to consider the plaintiffs' pending motion for partial summary judgment.