QUEENIE, LTD., Plaintiff–Counter–
Defendant–Appellant,

Marc Gardner, Heavenly Fabrics, Inc., and Joseph Heaven, Counter–Defendants–Appellants,

v.

NYGARD INTERNATIONAL, Defendant–Counter–Claimant–Appellee.

Docket Nos. 02–7158, 02–7162(CON).

United States Court of Appeals, Second Circuit.

Argued: Dec. 10, 2002.

Decided: Feb. 25, 2003.

See also 2002 WL 31496202.

Marc Bogatin, New York, N.Y., for Plaintiff–Counter–Defendant–Appellant Queenie, Ltd., and Counter–Defendant–Appellant Marc Gardner.

Wayne M. Greenwald, Greenwald & Rimberg, L.L.P., New York, N.Y., for Counter–Defendants–Appellants, Joseph Heaven and Heavenly Fabrics, Inc.

John F. Triggs, Greenberg & Traurig, LLP, New York, N.Y., for Defendant–Counter–Claimant–Appellee Nygard International.

Before: NEWMAN, SACK, and SOTOMAYOR, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal illustrates the pitfalls that can be encountered in the complexities of even routine litigation. Sometimes those complexities result in the forfeiture of a defense that arguably has merit. When that occurs, an appellate court faces a choice between enforcing the forfeiture or burdening parties, witnesses, jurors, and

the trial court with a retrial. That choice confronts us on this appeal by Queenie Ltd. ("Queenie") and its president and sole shareholder, Marc Gardner ("Gardner"); and Heavenly Fabrics, Inc. ("Heavenly") and its president and sole shareholder, Joseph Heaven ("Heaven"), from the January 25, 2002, amended judgment of the District Court for the Southern District of New York (Naomi Reice Buchwald, District Judge) in litigation that began as a suit for copyright infringement. The judgment awards Nygard International ("Nygard") attorney's fees for successfully defending a copyright infringement claim and punitive damages on its counterclaim for tortious interference with prospective economic advantage. The punitive damages award is challenged on appeal. Gardner is currently a debtor in a bankruptcy proceeding. We conclude that the automatic bankruptcy stay applies to Gardner and to Queenie, his wholly owned corporation, but not to the other judgment-debtors, Heavenly or Heaven. We also conclude that, in the procedural context of this case, Heavenly and Heaven have forfeited their arguable defense that punitive damages are unavailable for lack of an award of compensatory damages, and we therefore affirm.

## Background

In October 1999, Queenie sued Nygard (and others no longer parties to the litigation), alleging infringement of two registered copyrights for fabric designs. In March 2001, Nygard counterclaimed against Queenie, Gardner, Heavenly, and Heaven (collectively "Counterclaim Defendants"). Nygard claimed tortious interference with prospective economic advantage, alleging that the Counterclaim Defendants falsely registered both copyrights and wrongfully prosecuted their infringement claims against Nygard.

Because this appeal concerns primarily procedural aspects of the litigation, we summarize rather briefly the facts that the jury was entitled to find. Queenie is a distributor of women's garments. It obtains fabric designs from a variety of sources, including print mills, design studios, and fabric wholesalers. Queenie uses these designs in creating its clothing, which is manufactured in independent fabric mills overseas, primarily in Korea. Heavenly is a textile importer. It contracts for the manufacture of fabrics for women's apparel and provides designs to its clients, who in turn purchase fabric from Heavenly for the purpose of creating garments that use these designs. Queenie and Heavenly have done business together for approximately eight years. Nygard manufactures and distributes women's apparel.

According to the Counterclaim Defendants, in early 1996, Heaven showed Gardner two fabric designs that Heaven claimed had been created by Heavenly's former employee, Dong Mi Chung. Heavenly assigned what it claimed were its rights in the two designs to Queenie. In August 1997, Heavenly registered copyrights for both designs in the name of Queenie, naming Heavenly as the author of the designs. However, Ms. Chung, the alleged designer, testified that she had not created the two designs. In fact, according to testimony of an executive of Saehwa, a Korean textile print mill, both designs had been created by third parties who had brought the designs to Saehwa in October 1996.

Nygard bought fabric imprinted with the two designs from Saehwa and used them in its manufactured garments. That use precipitated Queenie's suit against Nygard for copyright infringement. Nygard defended on the ground that Queenie had obtained its copyrights by fraud on the

Copyright Office. Nygard's theory, evidently accepted by the jury, was that Queenie had somehow learned that Nygard was going to use the Saehwa designs on its products and then fraudulently obtained copyright registrations in order to sue Nygard when its products came on the market. Nygard counterclaimed against Queenie for tortious interference with prospective economic advantage and named as additional counterclaim defendants Gardner, Heavenly, and Heaven. The theory of the counterclaim was that Nygard had been damaged in its relationships with its customers by the threatened and ultimately filed copyright infringement suit. Nygard sought damages including its attorney's fees in defending against the infringement claim.

*Litigation procedure.* Prior to trial, the parties agreed to a somewhat unusual bifurcation of issues, one that would plant the seeds for the principal issue on this appeal. They agreed that, if the jury found in favor of Nygard on its counterclaim, the amount of compensatory damages would be determined by the Court and the amount of any punitive damages would be determined by the jury.[1] As far as we can tell from the rather imprecise way the parties proceeded at trial and their equally imprecise briefs on appeal, this agreement stemmed from the parties' shared understanding that attorney's fees in defense of the infringement claim would count as compensatory damages on the tortious interference counterclaim and Nygard's position that such fees were the only item of *quantifiable* compensatory damages that it could prove. Apparently, the parties believed that determining the amount of such fees would be appropriate for the Court.

As a result of the agreed bifurcation, Nygard did not present any evidence of the amount of its compensatory damages, but did present evidence to show the fact that it had sustained some damages. Nygard pointed to the attorney's fees it had incurred in defending against the infringement claim and testimony from a Nygard employee, Fiona Duncan, that Nygard had changed the way it did business as a result of the tortious conduct of the Counterclaim Defendants. Duncan acknowledged that she could not put a dollar value on the impact of Nygard's changed business practices.

After both sides rested, no party moved for judgment as a matter of law ("JMOL") under Rule 50 of the Federal Rules of Civil Procedure.

The jury charge correctly explained the elements of tortious interference with prospective economic advantage, including the element "that Nygard sustained damages as a result of" the tortious conduct of the Counterclaim Defendants. The jury was told that, if it found in favor of Nygard on its counterclaim, the jury need not determine the amount of compensatory damages; the amount of these damages would be determined later by the Court. The jury was also told that, if it found that the Counterclaim Defendants were liable for Nygard's injuries, it could award punitive damages and determine their amount.

During its deliberations, the jury sought clarification of the meaning of "economic advantage" with respect to the tortious interference counterclaim, specifically asking whether this phrase "pertain[s] to legal fees, loss of sales and settlements."

---

1. We have previously suggested that an appropriate bifurcation would be to defer the determination of the amount of punitive damages until determinations have been made as to liability, the amount of compensatory damages, and whether to award any punitive damages. *See Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 374 (2d Cir.1988).

Judge Buchwald responded to the jury's inquiry as follows:

> The answer to the question is that it could refer to all of those things, but as this case has been structured, you have not been asked to place a dollar value on those damages or losses. I will do that if you find that Nygard prevails on its counterclaim of tortious interference.
>
> What you have been asked to do—again, if you find that Nygard has proven its counterclaim of tortious interference—is to determine whether punitive damages are appropriate in that context and, if so, for how much.
>
> Does that clarify what you need to know? Your job is the punitive damage side, if you find liability. Mine is the actual damage side. OK?

The Counterclaim Defendants did not object to any of the relevant instructions.

The jury rejected Queenie's copyright infringement claim and found the Counterclaim Defendants liable to Nygard for tortious interference with economic advantage. The jury awarded punitive damages of $250,000 each against Queenie and Heavenly and $500,000 each against Gardner and Heaven.

The Counterclaim Defendants moved for JMOL, for a new trial, and for remittitur of the jury's punitive damages award.[2] Recognizing that, because of the bifurcation, Nygard was to present its evidence as to the amount of compensatory damages to the Court, the Counterclaim Defendants argued in support of JMOL that Nygard had not submitted proof that it had incurred any damages. Still under the impression that attorney's fees in defense of the infringement claim were compensable as tort damages, the Counterclaim Defen-

dants argued that it was "not outside the realm of possibility" that the lawyer defending Nygard at trial "would work for free." No mention was made of Duncan's testimony concerning the changes in Nygard's business practices. A new trial was sought on the ground that the District Court should not have permitted Nygard to call Chung as a rebuttal witness because she had not been included on Nygard's witness list. The punitive damages award was challenged for lack of proof of actual damages and because the tortious conduct had not been aimed at the general public. Nygard opposed these motions and sought attorney's fees.

The District Court rejected the motions for JMOL, a new trial, and remittitur of the punitive damages award. The JMOL request was denied on the grounds that the bifurcation agreement waived the Counterclaim Defendants' challenge to the sufficiency of proof as to compensatory damages and that the absence of a pre-verdict Rule 50(a) motion precluded a post-verdict Rule 50(b) motion. A new trial was denied on the grounds that Queenie, having subpoenaed Chung as a witness, could not claim surprise, and that barring her testimony would have enabled the Counterclaim Defendants "to expand a fraud upon the United States Copyright Office to a fraud upon the Court." The challenge to the punitive damage award was rejected on the grounds that there had been no objection to the jury charge permitting the jury to award punitive damages and that the bifurcation agreement had waived the contention that punitive damages could not be awarded in the absence of compensatory damages.

With respect to Nygard's claim for attorney's fees, the Court ruled that attor-

---

**2.** The motion was apparently made by a letter dated October 22, 2001. Neither the letter nor a formal motion is reflected in the docket entries, but the District Court entertained the motion as if it had been properly filed.

ney's fees were not compensable as actual damages on the counterclaim, citing *Coopers & Lybrand v. Levitt*, 52 A.D.2d 493, 496–97, 384 N.Y.S.2d 804, 806–07 (1st Dep't 1976),[3] but awarded Nygard its fees in the amount of $221,099 and costs of $39,918.41 as a prevailing defendant in a copyright infringement suit. *See* 17 U.S.C. § 505.

On November 14, 2002, Gardner filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

## Discussion

### I. The Automatic Stay

■ Preliminarily, we consider whether the automatic stay, 11 U.S.C. § 362(a), which requires a stay of this appeal with respect to Gardner, applies to the appeals of the other Appellants. We requested the parties' views on the stay issue, and, as with many aspects of this litigation, have received somewhat unexpected responses. Atty. Greenwald, who represented Heavenly and Heaven ("the Heavenly Appellants") at trial, advised that he represents Gardner in his bankruptcy case but not on this appeal, and continues to represent the Heavenly Appellants on this appeal. Atty. Greenwald urges, on behalf of Gardner, that the bankruptcy stay should apply to all four Appellants, but, in his capacity as counsel for the Heavenly Appellants, he reports that they take no position with respect to the stay issue. No one representing Queenie has responded to our request. Atty. Triggs, representing Nygard, responded that he did not believe it "makes sense to oppose the application of the automatic stay to all parties to this proceeding." Thus, Gardner, the bank-

ruptcy debtor, wants the stay to apply to himself, his corporation, and to the Heavenly Appellants; Nygard, the judgment-creditor on this appeal, does not oppose application of the stay to all parties; the Heavenly Appellants, who are judgment-debtors on this appeal, explicitly take no position; and Queenie, also a judgment-debtor, is silent on the issue.

We conclude that the automatic stay, which unquestionably applies to Gardner, *see Koolik v. Markowitz*, 40 F.3d 567, 568–69 (2d Cir.1994) (stay of appeal by debtor of judgment entered against it on counterclaim), applies to his wholly owned corporation, Queenie, but not to the Heavenly Appellants. "[A] suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing." 3 *Collier on Bankruptcy* § 362.03[3][d] (15th ed.2002); *see Croyden Associates v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir.1992); *Teachers Insurance and Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir.1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir.1983); *cf.* 11 U.S.C. § 1301(a) (stay in Chapter 13 proceeding applicable against "any individual that is liable on [a] debt with the debtor"). The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor, *McCartney v. Integra National Bank North*, 106 F.3d 506, 510–11 (3d Cir.1997), a claim against the debtor's insurer,

---

**3.** The correctness of this ruling, *cf. McNamara v. Powell*, 256 A.D. 554, 559, 11 N.Y.S.2d 491, 497 (App. Div. 4th Dep't 1939) (holding that "plaintiff is entitled to recover the [attorney's] fees and expenses expended and incurred by him in defending his right to the invention and to letters patent thereon"), is not challenged by Nygard on this appeal, and we express no opinion on it.

*Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.),* 26 B.R. 420, 435–36 (Bankr.S.D.N.Y.1983) (on rehearing), and actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant ...," *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986).

Under these principles, the stay applies to Queenie because it is wholly owned by Gardner, and adjudication of a claim against the corporation will have an immediate adverse economic impact on Gardner. Gardner contends that the stay should also apply to the Heavenly Appellants because "[i]f this Court decides the pending appeal of the non-debtor co-judgment debtors, it is effectively deciding Mr. Gardner's stayed appeal."[4] In essence, Gardner seeks to apply the stay to the Heavenly Appellants to avoid the later use against himself and his corporation of offensive collateral estoppel arising from a ruling on this appeal adverse to these Appellants or at least to guard against the precedential effect of such a ruling.

We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision. If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants.

Gardner's reliance on *Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial Corp.),* 117 B.R. 64 (S.D.N.Y. 1990), is unavailing. That district court decision affirmed a bankruptcy court's in-

junction staying a suit against a debtor corporation's two key officers, who were accused of fraudulently causing a creditor to make a loan to the corporation. Although the district court's opinion mentions possible collateral estoppel, the ruling is primarily explained by the existence of the debtor's indemnity obligation to the corporate officers. *See id.* at 68. Moreover, the bankruptcy court's authority to stay the litigation was invoked not only under section 362(a) but also under section 105 of the Bankruptcy Code, which grants broader authority, *see In re Baldwin–United Corp. Litigation,* 765 F.2d 343, 348 (2d Cir.1985). Gardner cites three other decisions for the proposition that "[s]ome courts conclude that 11 U.S.C. § 362(a)(1) applies to third parties automatically." This argument exceeds the bounds of responsible advocacy. In two of the cited decisions the stay was granted primarily because the debtor corporation was obligated to indemnify the non-debtor defendant, *see North Star Contracting Corp. v. McSpedon (In re North Star Contracting Corp.),* 125 B.R. 368, 369, 371 (S.D.N.Y. 1991); *Maxicare Health Plans, Inc. v. Centinela Mammoth Hospital (In re Family Health Services, Inc.),* 105 B.R. 937, 941–43 (Bankr.C.D.Cal.1989), and in the third decision the stay was denied, *General Dynamics Corp. v. Veliotis (In re Veliotis),* 79 B.R. 846, 848 (Bankr.E.D.Mo.1987).

We will stay this appeal only with respect to Gardner and Queenie, and proceed to consider the merits of the appeal with respect to the Heavenly Appellants.

## II. The Merits

■ On the merits of the appeal, as it affects Nygard and the Heavenly Appel-

---

4. The Heavenly Appellants are "co-judgment debtors" only in the sense that they have been adjudicated liable for specified sums in the same judgment that adjudicates the separate liability of Gardner and Queenie for specified sums. Each Counterclaim Defendant is individually liable for the separate sums awarded against it.

lants, we agree with the District Court that the absence of a pre-verdict Rule 50(a) motion and the agreement to the bifurcation of damage issues combine to constitute a forfeiture of the Counterclaim Defendants' arguable defense that punitive damages are unavailable in the absence of compensatory damages (or perhaps at least nominal damages). A party is barred from challenging the sufficiency of evidence on an issue "unless it has timely moved in the district court for judgment as a matter of law on that issue." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir.1998). Had the Counterclaim Defendants contended before the jury's verdict that Nygard's proof of the fact of compensatory damage was insufficient, Nygard would have had an opportunity to remedy the alleged deficiency with further evidence from Duncan or others as to the adverse economic impact of the tortious interference. It appears that the Counterclaim Defendants considered Nygard's evidence sufficient because they thought, as Nygard did, that Nygard's attorney's fees qualified as an item of compensable damages. But even if that assumption was incorrect, a party's misapprehension of law is an unlikely basis for excusing the absence of a timely Rule 50(a) motion. This case, involving a blatant fraud on the Copyright Office, does not remotely present a situation where relief from Rule 50(a) requirements is warranted to avoid "manifest injustice." *Weissman v. Dawn*

*Joy Fashions, Inc.*, 214 F.3d 224, 232 (2d Cir.2000).

The Counterclaim Defendants contend that they did not fail to make a timely Rule 50(a) motion because the issue of compensatory damages was to be decided by the Court and they asserted the absence of proof of such damages before that issue was submitted for the Court's decision. However, it was an element of Nygard's claim before the jury that it suffered some compensatory damages, and if Nygard's evidence was insufficient to show the fact of such damages, that objection had to be presented before the case went to the jury.[5] The jury resolved that issue in Nygard's favor, either on the questionable theory, not objected to at trial, that attorney's fees were compensable damages, or on the clearly valid theory, arguably supported by Duncan's sketchy testimony, that Nygard had suffered some adverse economic consequences.

Once the Counterclaim Defendants agreed to the unusual bifurcation of damage issues, allowing punitive damages to be determined before any consideration of compensatory damages, they forfeited their arguable defense that punitive damages required some award of compensatory (or perhaps nominal) damages. They agreed to have the jury determine whether and in what amount punitive damages were to be awarded, without any condition that the Court would subsequently determine some quantifiable amount of compen-

---

**5.** Judge Sotomayor's concurring opinion suggests that we are faulting the Heavenly Appellants for failing, before the case went to the jury, to make a Rule 50 motion "on the issue whether compensatory damages are required to support an award of punitive damages." 321 F.3d at 291. That is not our position. The Rule 50 motion was needed to preserve the claim that Nygard had not presented sufficient evidence to prove the fact of at least some compensable harm, a fact that was an element of Nygard's counterclaim. Absent the Rule 50 motion, the Heavenly Appellants forfeited any complaint that Nygard had not proved the fact of at least some compensable harm. With that fact decided in Nygard's favor by the jury's verdict and with the bifurcation leaving only the amount of compensatory damages to be decided by the Court, the Heavenly Appellants lost the opportunity to complain that the punitive damages award was defective for lack of a compensatory damages award.

satory damages. Had they asserted before the case went to the jury the ground now raised on appeal for objecting to punitive damages, Nygard would have had the opportunity to reconsider the wisdom of the bifurcation of damage issues, and might well have both shored up its evidence of compensatory damages and submitted the determination of the amount of such damages to the jury.

Moreover, even on the Counterclaim Defendants' theory, advanced on appeal, that they timely complained of insufficient proof of compensatory damages before that issue was submitted to the Court, they did not contend in the District Court that attorney's fees were not compensable damages. Their submission to the District Court assumed that such fees were compensable, and they argued only that Nygard's lawyer might have worked without compensation. Nygard, also apparently sharing the view that fees were compensable damages, saw no need to do more than submit to the Court evidence of its fees. The Court, for its part, ruled that fees were not compensable damages and saw no need to do anything more than award the fees under the Copyright Act. Had the Counterclaim Defendants contended in the District Court that punitive damages required not merely the jury's determination of the fact of compensatory damages but the assessment of some quantifiable amount by the District Court, the Court could then have considered whether to make some slight award of compensable damages, or, if not, whether an award of nominal damages is necessary as a predicate for punitive damages. But the Court was not faced with this contention, and simply awarded under the Copyright Act the only dollar amount Nygard sought from the Court.

In short, the Counterclaim Defendants, either misapprehending the law or thinking that they had secured a tactical advantage by the bifurcation of damage issues, forfeited whatever arguable defense they might have had to the award of punitive damages.

The Counterclaim Defendants' challenge to the amount of the punitive damages is also unavailing. This challenge is based on the absence of an award of compensatory damages, but in this case that absence is primarily due to the procedure agreed to by all the parties and to the fact that the only quantifiable compensatory damages sought by Nygard were awarded to it as statutory attorney's fees. The Counterclaim Defendants challenged the punitive award in the District Court on the ground that "the jury was without any basis to assess an award of punitive damages in relationship to any actual damages suffered by [Nygard]." However, that is precisely the way the Counterclaim Defendants permitted the jury to consider the punitive damage issue. Nor can the award of punitive damages be deemed excessive in relation to the financial resources of Heavenly and Heaven in the absence of any evidence from these parties as to their financial condition. See Zarcone v. Perry, 572 F.2d 52, 56 (2d Cir.1978).

Finally, the claim of the Counterclaim Defendants that a new trial should have been ordered because Chung was permitted to testify as a rebuttal witness for Nygard was properly rejected.

### Conclusion

The appeal is stayed as to Appellants Gardner and Queenie, pending further order of the Bankruptcy Court or this Court,[6] and the judgment in favor of Ny-

---

**6.** Gardner shall promptly notify this Court in the event that the Bankruptcy Court grants

relief from the section 362 stay with respect

gard and against Heavenly and Heaven is affirmed.

SOTOMAYOR, Circuit Judge, concurring.

The majority holds that (1) the automatic bankruptcy stay, 11 U.S.C. § 362(a), applies to bankrupt debtor Marc Gardner and his wholly owned corporation, Queenie Ltd., but not to the remaining Counterclaim Defendants, Joseph Heaven and Heavenly Fabrics, Inc. (the "Heavenly Appellants"),[1] and (2) the Heavenly Appellants have waived the potential defense that compensatory or nominal damages are required to support an award of punitive damages. I agree with both of these holdings. I write separately to clarify exactly when I believe the Heavenly Appellants' waiver occurred.

I would hold the Heavenly Appellants responsible only for failing to make their motion before Judge Buchwald rendered her decision as factfinder on compensatory damages. It is not completely clear from the record whether, under the parties' agreed bifurcation, the judge was simply to find the amount of compensatory damages, or was to be the factfinder with respect to compensatory damages in general, or even what this distinction might mean. Judge Buchwald instructed the jury both that she would "place a dollar value" on the compensatory damages Nygard suffered if the jury found the Counterclaim Defendants liable and that "[y]our job is the punitive damages side, if you find liability. Mine is the actual damages side." Given the ambiguity in the record, I disagree with the majority that the Heavenly Appellants are responsible for failing

to make a Rule 50 motion before the jury trial on the issue whether compensatory damages are required to support an award of punitive damages.

In its submission for compensatory damages to Judge Buchwald, Nygard relied solely upon its argument that attorney's fees were compensable damages in a claim for tortious interference with prospective economic advantage. Had the Heavenly Appellants argued in their Rule 50 motion, filed after the jury verdict but before Judge Buchwald's determination of compensatory damages, that attorney's fees were not compensable damages and therefore Nygard had demonstrated no compensatory damages to the relevant factfinder (that is, Judge Buchwald), the motion would have been timely and the Heavenly Appellants would have properly raised the potential defense that compensatory damages must support a punitive damages award. By neglecting to make this argument in the district court, the Heavenly Appellants have waived it. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 76 (2d Cir.2001).

I note that because the Heavenly Appellants raised this argument for the first time on appeal, Nygard did not have the opportunity to provide additional evidence to the district court regarding compensatory damages, or to request nominal damages in an attempt to cure any potential problem. Avoiding such an inequity is precisely the purpose of Rule 50's requirement that a motion be made before the issue is submitted to the factfinder. *See id.* at 76–77 ("[T]he motion must be sufficient to inform the opposing party of the precise issue as to which more evidence is

---

to this appeal, or the stay lapses. *See Koolik*, 40 F.3d at 569.

**1.** While I applaud counsel's rhetorical turn of phrase, I note that, given the serious nature of the claims against the Counterclaim Defen-

dants, including perpetrating a fraud on the United States Copyright Office, the appellation may be less than appropriate. Not lacking a sense of irony, however. I too refer to these parties as the "Heavenly Appellants."

needed in order to warrant its submission to the jury."); *see also* Fed.R.Civ.P. 50 advisory committee note (1991 Amendment).

Thus, I am in agreement with the majority that the Heavenly Appellants' waiver disposes of this appeal, but have a different view of what actually constituted the waiver.[2] I would not impose upon the Heavenly Appellants an obligation to raise the compensatory damages defense before the close of the jury trial, because it was not clear that the jury was the factfinder on the issue of compensatory damages. Parties may shape litigation in a variety of ways, including various bifurcation methods. One hopes that in so doing, they think through the implications of their choice. Given the ambiguity in the record, the Heavenly Appellants may have relied upon a reasonable, albeit different, understanding of the parties' agreed bifurcation than the majority assumes. I would not hold the Heavenly Appellants bound by their choice when the record does not provide a clear answer regarding what that choice was. *Cf. City of New York v. Minetta,* 262 F.3d 169, 181 (2d Cir.2001) (finding waiver in the context of a *deliberate* choice to remain silent).

I do, however, hold the Heavenly Appellants bound by their failure to alert Judge Buchwald to the failure of Nygard's proof with respect to compensatory damages, and therefore concur that the judgment in favor of Nygard and against the Heavenly Appellants should be affirmed.

**2.** The majority suggests that I misread their position on the Heavenly Appellants' waiver. I read the majority as finding two separate waivers that combine to defeat the Heavenly Appellants' arguments. First, the Heavenly Appellants waived their argument that Nygard did not present sufficient evidence of compensatory damages to the jury by failing to make a Rule 50 motion before the end of the jury trial. Majority Op. at 289. Second, the Heavenly Appellants agreed to a bifurcation procedure that forfeited their arguable defense that an award of punitive damages is only proper if some form of compensatory damages is awarded. Majority Op. at 289–90.

The first waiver is not relevant to the Heavenly Appellants' argument on appeal, as they no longer argue that Nygard failed to present sufficient evidence of compensatory damages to the *jury.* I do not agree that the second waiver was, in fact a waiver, *see supra,* because the parties' bifurcation of compensatory and punitive damages did not automatically sever the legal link between compensatory and punitive damages. Nonetheless, for the reasons stated above, I believe that the Heavenly Appellants have waived their argument that some amount of compensatory damages are required to support an award of punitive damages.