**GUCCI, AMERICA, INC., Plaintiff,**

**v.**

**DUTY FREE APPAREL, LTD. d/b/a Duty Free Apparel, Inc., Joel Soren, Harvest Wrap, Inc., Kurt Davidson and John Does 2–20, Defendants.**

**No. 02 CIV. 1298(VM).**

United States District Court, S.D. New York.

June 24, 2004.

---

Milton Springut, Tal S. Benschar, Kalow & Springhut, L.L.P., New York, NY, for Plaintiff.

Steven M. Lester, East Meadow, NY, for Defendants.

### DECISION AND AMENDED FINAL JUDGMENT

MARRERO, District Judge.

In a Decision and Order dated April 22, 2004, this Court, following a bench trial at which the Court found liability, awarded plaintiff Gucci, America, Inc. ("Gucci"), substantial monetary and injunctive relief from a counterfeit retailer, Duty Free Ap-

parel, Inc. ("DFA") and its owner, Joel Soren ("Soren", and collectively with DFA "Defendants"). The Order, as originally structured, included a plan for the Court's future supervision of Defendants' sales, and outlined an injunction intended to balance the alternative remedies proposed by each party. Gucci now moves to amend the Court's judgment with respect to Soren, claiming that the injunctive remedy adopted would be highly damaging to its limited distribution system, and may compromise existing contracts with its authorized dealers. Faced with a solution that it believes is actually less acceptable than the form of injunctive relief Defendants had previously proposed, Gucci is now willing to adopt Defendants' recommendation, and moves the Court to revise its injunctive plan accordingly. For the following reasons, Gucci's motion is granted.

### I. BACKGROUND

The facts of this case, which are set out more fully in the Court's April 2004 Decision and Order, *see Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511 (S.D.N.Y.2004), are briefly as follows. Soren and DFA, a midtown Manhattan retailer of discount accessories, willfully sold a substantial amount of counterfeit Gucci merchandise. Following a bench trial, the Court ordered them to pay Gucci over $2 million in damages and attorney's fees, and set forth an injunctive remedy which it described as a "path in the middle" between the parties' proposals. *Id.* Gucci had urged the Court to bar Defendants forever from selling any Gucci merchandise whatsoever, while Defendants sought one last chance, and proposed a permanent brand-wide bar if they were ever found to have sold counterfeit Gucci goods again. As a means of accommodating the interests and concerns both parties expressed, the Court ordered Gucci to submit (to both the Court and Defendants) a

list of its authorized dealers in the United States and Italy, from any of which (and *only* from those so identified) Defendants could subsequently obtain Gucci merchandise for resale. The Court contemplated that such a procedure would enable Defendants to continue marketing Gucci goods and simultaneously minimize the costs and burdens of future product authentication.

Gucci now claims that the Court's injunction poses more difficulties for it than the Defendants' alternative (which Gucci is now willing to adopt), and moves to modify the Court's judgment accordingly under Federal Rule of Civil Procedure 59(e). Because DFA has filed for bankruptcy protection, and all proceedings before this Court on this matter are automatically stayed, Gucci's motion pertains to Soren alone.

## II. *DISCUSSION*

■ Soren's opposition to the amendment centers on a single argument: Soren contends that the automatic stay of proceedings granted to DFA as a consequence of its Chapter 11 bankruptcy filing, *see* 11 U.S.C. § 362(a), precludes Gucci from making any new motion against Soren himself prior to the close of DFA's bankruptcy proceedings. Soren describes his constructive protection as a proven exception to the existing rule that denies § 362(a) coverage to non-bankrupt co-defendants. The Court concludes that, because the amended injunction would be entirely collateral to the bankruptcy proceedings, the stay should not be judicially extended.

The Second Circuit has explained that automatic stays pursuant to § 362(a) are generally limited to debtors and do not encompass non-bankrupt co-defendants. *See Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986). Consistent with that guideline, courts in this Circuit have regularly refused to extend a debtor corporation's § 362(a) stay to its non-debtor officers and principals. *See Gray v. Hirsch,* 230 B.R. 239, 242 (S.D.N.Y.1999) (citing consistent Second Circuit refusal to shelter non-debtor principals as evidence that control of a bankrupt entity does not automatically establish § 362(a) protection). However, a § 362(a) stay may be imposed against a non-bankrupt party when such an identity of interest exists between the debtor and third party non-debtor that a judgment against the third party will directly affect the debtor. *See In re North Star Contracting Corp.* 125 B.R. 368, 370 (S.D.N.Y. 1991) (citing *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986)). Specifically, where a particular action against the non-debtor party threatens to adversely affect the debtor's reorganization efforts,[1] courts are willing to extend § 362(a)'s coverage accordingly. *See, e.g., In re United Health Care Org.,* 210 B.R. 228 (S.D.N.Y.1997) (staying actions against two non-debtor defendants where debtor corporation's successful reorganization was contingent upon the contribution of defendants' personal assets and efforts); *see also In re North Star,* 125 B.R. at 370–71 (distinguishing general rule where evidence indicated that debtor reorganization efforts would be harmed by a state lawsuit against debtor's President, given the Pres-

---

1. For example, the threatened harm may adversely affect needed debtor funds (*e.g.,* when non-debtors are entitled to indemnification) or personnel (*e.g.,* when debtors need the services of non-debtors facing crushing litigation). *Gray,* 230 B.R. at 243. "The question is whether the action against the non-debtor is sufficiently likely to have a material effect upon … reorganization effort[s] … that debtor protection requires an exception to the usual limited scope of the stay." *Id.* (citing *CAE Indus. Ltd. v. Aerospace Holdings Co.,* 116 B.R. 31, 34 (S.D.N.Y.1990)) (internal quotation marks omitted).

ident's active role in the reorganization planning process).

Courts caution that such extensions are reserved for "special circumstances," *id.* at 370, and typically apply to those lawsuits which threaten serious risk to a reorganization in the form of immediate adverse economic consequences for the debtor's estate. *See Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287 (2d Cir.2003). Soren's opposition to Gucci's motion fails to indicate a special circumstance of this sort. An amendment of the judgment as to Soren alone would have no effect on DFA's existing assets or on Soren's freedom to participate fully in the company's financial reorganization. The revised injunction, like the original, addresses only the means by which DFA's product authenticity will be guaranteed in the future, and places no limit on Defendants' ability to trade in legitimate Gucci merchandise.

In addition, the Court notes that Soren's claim to protection under the DFA stay relies on three decisions that are quite distinguishable from his own circumstances. The two cases he cites from this District as an endorsement of extended § 362(a) coverage turn on the indemnification of selected principals by the corporate debtor. *See In re North Star,* 125 B.R. at 369; *In re Lomas Fin. Corp.,* 117 B.R. 64, 68 (S.D.N.Y.1990). Those decisions specifically note the right of indemnification as the source of the non-bankrupt party's protection, and explain that the debtor corporation's financial responsibility for claims against its principals creates the identity of interest sufficient to justify ex-

tension of the automatic stay. *In re North Star,* 125 B.R. at 370; *In re Lomas,* 117 B.R. at 68. The third case Soren cites, *A.H. Robins,* follows a similar focus, considering at length the connection between corporate indemnification and the transfer of § 362(a) protection to non-debtor third parties, 788 F.2d at 999–1001. Put simply, the "special circumstances" required to justify extension of a § 362(a) stay exist when a judgment against the indemnified non-debtor will directly affect the debtor's assets. *In re North Star,* 125 B.R. at 370–71. Such is not the case here.[2]

■ Having determined that DFA's insulation from further litigation cannot be extended to protect Soren from an amendment of the judgment, the Court now turns to the central question of whether or not to revise its original injunction in accordance with Gucci's request.

The decision to grant or deny a Rule 59(e) motion rests in the discretion of the district court. *See McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983). From a practical point of view, this Court sees no reason to deny the amendment sought. In its motion, Gucci correctly points out that it had no opportunity to contest the Court's proposed injunctive plan prior to judgment, and Gucci indicates that the plan designed may in fact compromise existing contractual relationships between Gucci and its distributors. In a show of good faith, Gucci proposes a revision of the Order that would restore this Court's earlier injunction against DFA's further sale of Gucci counterfeits, under penalty of a

---

**2.** Soren also implies that the Second Circuit's extension of an automatic stay in *Queenie* is comparable to the protection he seeks here. This suggestion fails to acknowledge that *Queenie*'s extension of one individual's stay protection to his fully-owned corporation also anticipated the adverse economic consequences that an adjudication against the corporation would have on the bankrupt party.

*See Queenie,* 321 F.3d at 287–288. In other words, though Soren correctly notes that the particular identity of the bankrupt and solvent parties (corporate versus individual debtor) is irrelevant to the question of whether to extend a § 362(a) stay, his own claim nonetheless bears little resemblance to the precedent it cites.

permanent brand-wide bar, and in effect accedes to a much less intrusive supervision of Soren's future business operations. Given the reasonableness of the request, and its accord with both this Court's past action and with Soren's own pre-judgment proposal, the Court finds no reason to deny the revision requested.

### III. *AMENDED FINAL JUDGMENT*

For the stated reasons above, the judgment of injunctive relief in the Court's Decision and Order dated April 22, 2004 is amended, with respect to defendant Joel Soren ("Soren") only, as set forth below. The Court's judgment as to defendant Duty Free Apparel, Inc., remains in effect in its original form, as a consequence of the § 362(a) bankruptcy stay. Accordingly, it is hereby

ORDERED that Soren is permanently enjoined from selling, offering for sale, advertising or distributing any counterfeit goods bearing any Gucci trademark, and from infringing on any Gucci trademarks; it is further

ORDERED that, if Soren, his agents, or employees should violate the above injunction, he shall thereafter be permanently enjoined from selling, offering for sale, advertising or distributing *any* goods bearing a Gucci trademark, regardless of their authenticity; and it is finally

ORDERED that Soren shall turn over to Gucci for destruction all Gucci brand merchandise still in his possession originating from defendant Harvest Wrap, Inc.

The Clerk of the Court is directed to enter amended final judgment accordingly and to close this case.

SO ORDERED.