Joseph **EBIN, Yeruchum Jenkins, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**KANGADIS FAMILY MANAGEMENT LLC, Aristidis Kangadis, Andromahi Kangadis, and Themis Kangadis, Defendants.**

No. 14–cv–1324 (JSR).

United States District Court, S.D. New York.

Signed Sept. 18, 2014.

Joseph Ignatius Marchese, Neal Jamison Deckant, Scott A. Bursor, Yitzchak Kopel, Bursor & Fisher, P.A., New York, NY, for Plaintiffs.

John Evans Jureller, Klestadt & Winters, LLP, New York, NY, George J. Krueger, Fox Rothschild LLP, Philadelphia, PA, Ryan Thomas Becker, Fox Rothschild LLP, Warrington, PA, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiffs Joseph Ebin and Yeruchum Jenkins bring this putative consumer class action against defendants Kangadis Family Management LLC, Aristidis Kangadis, Andromahi Kangadis, and Themis Kangadis, asserting six causes of action relating to the alleged practice of selling containers of Capatriti-brand "100% Pure Olive Oil" that actually contain a substance known as "olive-pomace oil." The six claims are (1) breach of express warranty under New Jersey law, (2) breach of implied warranty of merchantability under New Jersey law, (3) deceptive acts or practices under New York General Business Law ("NYGBL") § 349, (4) violation of the New Jersey Consumer Fraud Act ("NJCFA"), (5) negligent misrepresentation, and (6) fraud. Each cause of action is asserted against Aristidis Kangadis and Themis Kangadis individually on a theory of direct liability for their personal actions, and against all defendants through veil piercing and alter ego theories. The applicable complaint asserting these claims (the "Second Complaint") was filed after an earlier Complaint against the related entity, Kangadis Food Inc. ("KFI") was automatically stayed upon the entity's filing for bankruptcy on June 6, 2014. *See In re Kangadis Food Inc.*, No. 14–72649(REG) (Bankr.E.D.N.Y. filed June 6, 2014).

Defendants now seek to dismiss the Second Complaint, alleging that the bankruptcy stay precludes any veil piercing or alter ego claims in this court, that the state law of New York precludes any veil piercing or alter ego claims in this court, and that the direct claims against Themis and Aristidis Kangadis are insufficiently pled. Plaintiffs, for their part, not only oppose the motion but also now move to certify a nationwide class of all persons in the United States who purchased Capatriti 100% Pure Olive Oil packed before March 1, 2013, a subclass of Class Members who purchased in New York during the time period above, and a subclass of Class Members who purchased in New Jersey during the time

above. Defendants, in turn, oppose certification principally on the grounds of predominance and ascertainability. After full consideration of the parties' papers and oral arguments on both the motion to dismiss and the motion for class certification, the Court dismisses the direct claims against Themis and Aristidis Kangadis, holds that all claims against all defendants may go forth under the veil piercing and alter ego theories, and grants plaintiff's motion for class certification.

All the alleged misconduct in this case is ultimately grounded in the alleged misrepresentation made concerning the products sold by KFI. It follows that, barring exceptional circumstances not here present, there can be no individual liability for Aristidis Kangaids and Themis Kangadis except on an alter ego or veil piercing theory. At oral argument, plaintiffs conceded as much.[1] *See, e.g.,* Transcript dated 09/11/14 ("Tr.") at 53–54. Thus, the claims of personal or direct liability of Aristidis Kangadis and Themis Kangadis must be dismissed. Furthermore, although defense counsel argued at oral argument that the veil piercing claim had not been suffi-

ciently pled as a factual matter, Tr. at 32, this argument was noticeably absent from both their moving and reply papers, Tr. at 51, and thus is untimely and will not be considered by the Court.

■ Thus the critical question for this Court is whether anything in bankruptcy law or in New York State law precludes this case from proceeding, on veil piercing and alter ego theories of liability.[2] With respect to New York State law, the courts of that state have held, in analogous contractual disputes where one of the parties to the contract was not joined in an action as a defendant, that failure to join did not warrant dismissal of the action against a third party on an alter-ego theory of liability. *See, e.g., Baby Phat Holding Co., LLC v. Kellwood Co.,* 120 A.D.3d 428, 428–30, 991 N.Y.S.2d 592 (1st Dep't 2014). New York courts have held that this is especially true in instances where it has become difficult to proceed against the non-joined party because of, for example, dissolution rendering the party judgment proof. *Id.* Although the defendants point to ambiguous dicta in New York law stat-

1. For example, the direct claims for breach of express and implied warranties (Counts I & II) require that the breaching party be the seller; here Kangadis Food Inc. ("KFI"), rather than Themis or Aristidis Kangadis individually, is the seller. Similarly, the negligent misrepresentation claim (Count V) requires that the defendant have a duty by virtue of a special relationship with the consumer; here, the duty can at most be attributed to KFI, and not to the individual defendants. Finally, the heightened pleading standard for fraud (Count VI) is only satisfied if the Court imputes actions of the corporation onto the individuals.

2. Although defendants alleged at oral argument that the facts that would permit veil piercing or alter ego liability had not been adequately pled in the Second Complaint, this was not briefed in their papers and so was not preserved for the purposes of this motion. All that defendants could point to at oral argu-

ment in this respect was footnote 5 of their reply brief. Tr. 54–55. However, footnote 5 states merely "[i]n a footnote, Plaintiffs state that the Defendants' 'brief makes no substantive argument concerning the sufficiency of the facts pleaded to support the veil-piercing/alter-ego theories of liability.' The Bankruptcy Court's decision was quite clear that such claims were stayed. Further this Court has already held on two occasions that these claims are derivative of the claims against KFI. Nonetheless, Defendants' Memorandum of Law cites the relevant New York law regarding piercing the veil. Further, although Plaintiffs state that KFI was a 'sham,' there are no plausible facts even asserted on this point as Capatriti was only one of many products admittedly sold by KFI." Defendant's Reply Brief at 5 (citations omitted). None of this attacks the factual sufficiency of the veil-piercing/alter ego pleadings.

ing that an attempt "to pierce the corporate veil does not constitute a cause of action independent of that against the corporation," *Morris v. New York State Dep't of Taxation and Finance,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993), the case cited does not discuss whether an attempt to pierce the veil can be made without joining the underlying corporation, but rather whether sufficient domination and control has been shown, *id.* at 143, 603 N.Y.S.2d 807, 623 N.E.2d 1157, and thus is not relevant to the issue before this Court.

■ With respect to the bankruptcy stay, it is well established that stays pursuant to Section 362 "are generally limited to debtors and do not encompass non-bankrupt co-defendants." *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 328 F.Supp.2d 439, 441 (S.D.N.Y.2004); *see, e.g., Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986). "Consistent with that guideline, courts in this Circuit have regularly refused to extend a debtor corporation's § 362(a) stay to its non-debtor officers and principals." *Gucci America, Inc.,* 328 F.Supp.2d at 441; *see also Gray v. Hirsch,* 230 B.R. 239, 242 (S.D.N.Y.1999). A non-debtor can claim the protection of a debtor's stay only in very unusual circumstances, where to do otherwise would immediately and necessarily deplete the assets of the debtor's estate. *See, e.g., Queenie, Ltd. v. Nygard International,* 321 F.3d 282, 287 (2d Cir. 2003) ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."). This is of no concern here, as the damages sought are entirely against the non-debtor defendants.

Defendant argues that at the August 16, 2014 bankruptcy hearing for KFI, the bankruptcy court stayed the veil piercing claims in this action by stating that "[t]o the extent [plaintiffs'] claims rely on piercing the corporate veil of the Debtor, the Class Action Plaintiffs are aware of the consequences as they have appear to have read, and have cited to this Court's *In re Pitts* decision in their brief." Declaration of John E. Jureller, Jr. dated 08/12/14 ("Jureller Decl."), Exhibit ("Ex.") F, at 13. However, *In re Pitts* holds merely that in the unusual circumstance that plaintiffs pierce the corporate veil of a non-debtor corporate defendant, such an action would have an immediate economic impact on the debtor defendant, triggering the automatic stay's application to the nondebtor corporate defendant. 2009 WL 4807615 at *8 (Bankr.E.D.N.Y. Dec. 8, 2009). Here, no such immediate economic impact is possible as the debtor is the corporate defendant, and piercing the corporate veil will result only in an economic impact on the non-debtor individuals.

Turning to class certification, defendant challenges primarily the so-called "ascertainability requirement," which has been found to be an implied requirement of both Rule 23(a) and Rule 23(b), and which requires the proposed class to be objectively determinable. *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140 (2d Cir.2001); *Stinson v. City of New York,* 2012 WL 2952840, at *2 (S.D.N.Y. July 19, 2012). Defendant argues that the difficulty in identifying all class members, defined as "all persons in the United States who purchased Capatriti 100% Pure Olive Oil packed before March 1, 2013," which results from the fact that KFI's business is to sell directly to retailers rather than to ultimate consumers, combined with the fact that the retailers "can only identify purchasers who used the company's loyalty card program," *In re Clorox Consumer Litig.,* 301 F.R.D. 436,

12–cv–0028 (SC), 2014 WL 3728469 (N.D.Cal. Jul. 28, 2014), makes it difficult to determine exactly who is bound by the Court's ruling and risks dilution from fraudulent claims.

■ However, whether or not an individual purchased during the class period a tin of Capatriti in the United States labeled "100% Pure Olive Oil" that actually contained Pomace is about as objectively determinable a question as one can ask. The New York Subclass includes those class members who purchased in New York, and the New Jersey Subclass includes those who purchased in New Jersey. None of these determinations involves any subjective inquiry, such as inquiries into putative class members' state of mind. Although the limitations of both KFI's records and the retailers' records may make it somewhat challenging to identify every single class member, there is no requirement that all class members be identified; what is required is merely individual notice to those class members "who can be identified through reasonable effort." Fed. R.Civ.P. 23(c)(2)(B). Finally, concerns that fraudulent claims would dilute recovery are misplaced and should not preclude class certification, as the likelihood of a claims rate less than one hundred percent would mean that "any fraudulent or inaccurate claimants would merely be standing in the stead of legitimate ones, and no material dilution would occur" where "aggregate liability is tied to a concrete objective set of facts—its total sales—that will remain the same no matter how many claims are submitted." *Forcellati v. Hyland's Inc.*, 2014 WL 1410264 at *5–6 (C.D.Cal. April 9, 2014).

■ Defendant also challenges the predominance[3] and commonality requirements of Rule 23(b) and Rule 23(a) respectively,[4] arguing with respect to Counts V and VI that a nationwide class would implicate fifty states' differing laws of fraud and negligent misrepresentation, and thus defeat certification. Although certain courts have held that cases which implicate the common law of fraud are inappropriate for class resolution, *see, e.g., Lewis Tree Serv., Inc. v. Lucent Technologies Inc.*, 211 F.R.D. 228 (S.D.N.Y.2002), this is not true in this instance, since here, the item purchased, by labeling itself as 100% Pure Olive Oil, in effect defined the product. Unlike most fraud and negligent misrepresentation claims, it is thus inconceivable that any individual would not have relied on the tin's labeling in its purchase, since otherwise the individual would merely be purchasing a random tin of unknown fluid. Thus, the Court finds that while some variation exists among states in the common law of fraud and negligent misrepresentation, when applied to the facts of this particular case any such variation is unlikely to lead to actual variation in adjudication of liability.

The Court has considered all other elements of class certification and all defendant's arguments related thereto, and having done so, grants plaintiff's motion for class certification. The Clerk of the Court

---

3. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. Paine-Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

4. Since the predominance standard is more demanding than the commonality standard, the Court focuses on the former. *See, e.g., Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013).

is ordered to close docket numbers 25 and 30.

SO ORDERED.